MARYLAND RADIOLOGICAL SOCIETY, INC., ET AL. *v.*
HEALTH SERVICES COST REVIEW COMMISSION

[No. 31, September Term, 1979.]

*Decided June 28, 1979.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*M. Peter Moser* and *Melvin J. Sykes,* with whom was *Jeffrey A. Wyand* on the brief, for appellants.

*Jay E. Levy, Assistant Attorney General,* with whom were *George A. Nilson, Deputy Attorney General,* and *Stanley Lustman, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The present legal skirmish is a by-product of this Court's earlier Maryland Rule 871 remand in this same action for further proceedings consistent with our opinion that has now been reported as *Holy Cross Hosp. v. Health Services,* 283 Md. 677, 393 A. 2d 181 (1978).

The record in that case, which is again before us, discloses that following an administrative hearing in which Holy Cross Hospital actively participated as a party, respondent

Maryland Health Services Cost Review Commission concluded "that the salaries of the radiologists, pathologists and cardiologists [associated with the hospital] are subject to [commission] review as a part of their legislative charge to assure the public that total costs are reasonably related to total services provided." The hospital, being dissatisfied with this determination, appealed to the Circuit Court for Montgomery County pursuant to Md. Code (1957, 1978 Repl. Vol.), Art. 41, § 255, a part of the Administrative Procedure Act. In the circuit court, Drs. Robert E. McCullough and Edward D. Soma, a pathologist and a radiologist, respectively, who were associated with Holy Cross, obtained leave to intervene and thus joined the hospital as parties before the trial court in contesting the validity of the commission's ruling. When the circuit court reached the same conclusion as had the administrative agency, the hospital and the two intervening doctors, in a proper manner, sought further appellate review and we granted certiorari.

In identifying the issue earlier before this Court in *Holy Cross Hosp. v. Health Services,* our opinion indicates that we were there

> involved as a matter of statutory construction with the question of whether fees charged by physicians in certain medical specialties to hospital patients, which fees are placed on hospital accounts and billed by the hospitals in such amounts to the patients, constitute a part of "the total costs of the hospital" so as to be considered as "reasonably related to the total services offered by the hospital" and thus whether the Maryland Health Services Cost Review Commission (the Commission) is empowered to review and set charges by these physicians in the specialties of cardiology, pathology, and radiology. [283 Md. at 679, 393 A. 2d at 182.[1]]

---

1. In that case an amicus curiae brief was filed in this Court by each of the following: Maryland Radiological Society, Inc., a petitioner in the present case; Medical and Chirurgical Faculty of Maryland; several members of the medical staff of Holy Cross Hospital of Silver Spring, Inc.; and the Maryland Society of Pathologists, Incorporated.

In disposing of that question, Judge Smith, writing for the Court, announced and explained our ruling:

> [W]e are unable to agree with the conclusion of the trial judge or the conclusion of the Commission that the fees charged by these pathologists, radiologists, and cardiologists are a part of the "costs of the hospital," the term being used here in the sense of cost of operation of a hospital. On the other hand, we do not rule out the possibility that at the time of the enactment of this statute the words "total costs of the hospital" might have been a term "of art" in the health care field having a well understood meaning different from its common signification which would include the fees of the physicians here. Therefore, we think that the cause of justice would be best served by a remand of this case to the Circuit Court for Montgomery County under Maryland Rule 871 without affirmance or reversal for further proceedings in which the Commission would be afforded an opportunity to present evidence of such an understanding of the meaning of the term within the field of health care at the time this statute was enacted, if such testimony in fact is available. [*Id.* at 689-90 [187].]

The record, as it relates to the current dispute before us, discloses that in December 1978, at about the time our mandate issued in the principal case, Maryland Radiological Society, Inc.,[2] and two of its radiologist-officers, Drs. Michael L. Sherman and James E. Bell, filed motions seeking leave under Maryland Rule 208 to intervene in the new proceeding that was directed by this Court. This request received a favorable endorsement from the hospital and the earlier intervening doctors, but met with stiff opposition from the commission. Concluding these intervention requests did

---

**2.** This organization is a Maryland membership corporation consisting of approximately 200 physicians who practice the specialty of radiology. Its members practice radiology in hospitals or private offices in each Maryland county and in Baltimore City, and comprise about 90% of all active practitioners of that specialty in this State.

not meet the requirements of Rule 208 in that they were not timely filed, and, in any event, the applicants had not shown satisfactorily that the representation of their interests by existing parties "is or may be inadequate," Circuit Court Judge Philip M. Fairbanks denied the motions on April 5, 1979. The following day the rejected movants appealed to the Court of Special Appeals and we later granted certiorari.[3]

Because Rule 208 controls intervention by an outsider in an already pending action and that rule is at the core of the dispute now before us, we note that in relevant part it provides:

> a. *Of Right.*
>
> Upon timely application a person shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action . . . .
>
> b. *Permissive*
>
> 1. Person
>
> Upon timely application a person may be permitted to intervene in an action when his claim or defense has a question of law or fact in common with the action.

In this appeal, the applicants controvert the trial court's denial ruling principally by asserting that they may intervene and participate as a matter of right under Rule 208 a in the upcoming proceeding that we ordered because 1) their motions were timely filed, and 2) their interests are not being adequately protected by the present parties, Holy Cross Hospital, Dr. McCullough, and Dr. Soma; alternatively, they

---

**3.** Following entry of this appeal, the applicants filed a motion in the trial court seeking a stay of further proceedings in that court pending the outcome of the appellate process. This request was denied. When an identical motion addressed to the Court of Special Appeals was likewise denied, the movants asked that this Court grant certiorari to review the propriety of the ruling. We acceded to this request, and in addition broadened the writ to include the issues raised by the appeal then pending in the Court of Special Appeals; however, our prompt disposition of the merits of the intervention motions following an expedited hearing makes it unnecessary that we reach the question of whether a stay should have been granted.

urge that the trial court abused its discretion in not granting them permissive intervention pursuant to Rule 208 b. While agreeing with the petitioners that their applications to become parties were timely filed, we nevertheless reject the remaining two contentions they make and, as a consequence, will affirm the trial court's rulings denying intervention.[4] We now explain our reasons.

## TIMELINESS

Whether intervention be asked as of right or permissively, it is manifest from the inaugural words of both sections a and b of Rule 208 that timely application is a prerequisite to such a request being granted. Thus, before proceeding to consider the substantive merits of an intervention motion, a trial court should require that the applicant demonstrate the promptness of his request. Whether it is so shown is dependent upon the individual circumstances of each case and rests in the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review. *NAACP v. New York,* 413 U. S. 345, 365-66, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973). In considering the promptness factors contained in Federal Rule of Civil Procedure 24, which is almost identical to our Rule 208,[5] the United States Supreme Court stated in *NAACP* that "[a]lthough the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances." *Id.* at 365-66 (footnote omitted). Even though all relevant circumstances should be taken into account in assessing the timeliness of an intervention motion, as a general guide for the trial courts of this State in their consideration of the issue we now fashion from the federal

---

**4.** That the denial of a claim to intervene, both as a matter of right under Rule 208 a and permissively under Rule 208 b for abuse of discretion, becomes immediately appealable is no longer open to question. *See* Citizens Coordinating Comm. v. TKU, 276 Md. 705, 709-10, 351 A. 2d 133, 136-37 (1976).

**5.** In the absence of Maryland authority, the similarity of Maryland Rule 208 and Federal Rule 24 makes the decisions of the federal courts interpreting their rule of considerable precedential value in construing our rule. *See* Citizens Coordinating Comm. v. TKU, *supra,* 276 Md. at 712, 351 A. 2d at 138.

authorities the following framework for inquiry: one, the purpose for which intervention is sought; two, the probability of prejudice to the parties already in the case; three, the extent to which the proceedings have progressed when the movant applies to intervene; and four, the reason or reasons for the delay in seeking intervention. *See Natural Resources Defense Council v. Costle,* 561 F. 2d 904, 907 (D.C. Cir. 1977); *Commonwealth of Pa. v. Rizzo,* 530 F. 2d 501, 506 (3d Cir.), *cert. denied,* 426 U. S. 921 (1976).

The trial judge in the case now before us concluded that since the principal action was initiated in the circuit court in March of 1977 and intervention was not sought by the present applicants until our mandate in that case was issued in December 1978, the time lag of more than a year authorized the court's determination "that the applications to intervene are not timely filed and should not be granted, either on a permissive basis or as a matter of right." We, however, conclude that a consideration of the factors just set out requires a different ruling. In explanation we mention that, in the first place and of prime importance, it must be borne in mind that the applicants' purpose in seeking to intervene at the time their motions were filed was not in any way to change or otherwise influence any proceeding, ruling, or decision that had already been made or taken place in the action, but merely to participate in and urge adoption of their view on the very narrow issue this Court directed be determined on remand: Whether at the time of enactment the statutory words " 'total costs of the hospital' [were] *a term 'of art'* in the health care field having a well understood meaning [that has general acceptance throughout Maryland] different from its common signification which would include the fees of the physicians here." *Holy Cross Hosp. v. Health Services, supra,* 283 Md. at 689, 393 A. 2d at 187 (emphasis supplied). Thus, in more than a technical or symbolic sense, the proceeding that is to take place on remand may be compared to the institution of a new action on the date our mandate in the principal case was received in the circuit court in December of 1978. Accordingly, taking into account that the intervention applications were filed within a few days of

our mandate in the principal case; that, if promptly granted by the trial court, the requests would cause no delay in a resolution of the remaining issue; that all parties except the commission approved the granting of the motions; that the movants seek only to participate in the proceedings to be conducted under our mandate; and that the only unresolved issue was one propounded by this Court and not one raised by the movants or any of the existing parties, we see no escape from a conclusion that the applications of the three movants here were timely made.

## ADEQUACY OF REPRESENTATION OF APPLICANTS' INTERESTS BY EXISTING PARTIES

In determining an adequacy of representation issue under Rule 208 a, one's attention must necessarily be directed to a comparison of the interest asserted by the intervention applicant with that of each existing party. In juxtaposing these claims we believe it helpful to apply the suggestion of Professors Wright and Miller by initially classifying all applicants' interests as being adverse, similar, or identical to that of each of the existing parties and then apply the following "interest-analysis" test to determine whether the lack of adequate representation requirement has been met. 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1909, at 524 (1972). First, these authors suggest the obvious: If the potential newcomer's interest is not represented or advocated to any degree by an existing party, or if the existing parties all have interests that are adverse to those of the proposed intervenor, he is unrepresented and, assuming compliance with the other provisions of Rule 208 a, intervention should be permitted. *Id.* Second, if the applicant's interest is similar but not identical to that of an existing party, "a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Id.* (footnote omitted). Third, if the interest of an existing party and an intervenor-applicant are identical, or if an existing

party is charged by law with representing a movant's interest, "a compelling showing should be required to demonstrate why this representation is not adequate." *Id.*

Again bearing in mind the very limited issues yet to be determined in the trial court, when we apply this analysis to the present motions it becomes apparent that the movants' interests are in no way adverse to either of the two doctors or the hospital that are already parties to the suit. Both these existing parties and the present movants seek to demonstrate that the phrase "total costs of the hospital" is not a term "of art" in the health care field having generally throughout Maryland "a well understood meaning different from its common signification which would include the fees of [radiologists.]" *Holy Cross Hosp. v. Health Services, supra,* 283 Md. at 689, 393 A. 2d at 187. Moreover, the movants request no independent relief but merely seek as radiologists, or as a professional association representing radiologists, to join an existing party, who is also a radiologist, in resisting the commission's efforts to show the phrase "total costs of the hospital" is a term "of art" having a meaning different from its common signification such that it would include the fees of practitioners of that specialty.

Concluding as we do that the interests of the movants here and of at least one of the present parties, radiologist Dr. Soma, are identical, *see U.S. v. Am. Inst. of Real Estate Appraisers, etc.,* 442 F. Supp. 1072, 1082 (N.D. Ill. 1977) (professional organization represents interests of members who seek intervention), we turn our attention to a determination of what type of compelling showing must be made in order to demonstrate inadequacy of representation in these circumstances. In this regard, we think, that when the applicant seeking intervention makes no claim of his own but merely asserts a position that is precisely the same, and holds like consequences for him, as that championed by one who is already a party, then he can gain admittance on the ground that his interests are inadequately represented only if he can show collusion, nonfeasance, or bad faith on the part of those existing parties with whom his interest coincides. *Pierson v. United States,* 71 F.R.D. 75, 79 (D. Del. 1976); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and*

*Arbitrators,* 81 Harv. L. Rev. 721, 748 (1968); *see, e.g., Commonwealth of Virginia v. Westinghouse Elec. Corp.,* 542 F. 2d 214, 216 (4th Cir. 1976); *Stadin v. Union Electric Company,* 309 F. 2d 912, 919 (8th Cir. 1962), *cert. denied,* 373 U. S. 915 (1963). The petitioners here have made no effort to produce any evidence concerning the three factors just mentioned and, therefore, tacitly agree that there has been neither collusion between the commission and the other parties nor any indication of nonfeasance or bad faith on the part of any of the present parties in their efforts to resist the commission's contentions. Indeed, as far as the unresolved portion of this litigation is concerned, there is every indication of a compatibility of objective, and of efforts to obtain that goal, as between those parties resisting the commission's ruling and the current applicants seeking intervention. Accordingly, we conclude that the movants here are adequately represented by at least one of the existing parties and, therefore, may not compel admittance as parties to this suit as a matter of right under Rule 208 a.

## PERMISSIVE INTERVENTION UNDER RULE 208 b

Having reached the conclusion that the applicants here may not claim intervention as of right, we need not pause long with their contention that, alternatively, denial of intervention by the trial court should be reversed as constituting an abuse of that court's discretion. In considering this question, we have carefully reviewed the entire record and have concluded that, under the facts as we have related them in this opinion, we are unable to say that the trial court abused its discretion in denying petitioners' requests for permissive intervention pursuant to Rule 208 b. We add, however, that since it is apparent the trial court relied to a considerable extent on tardiness as a basis for refusing movants' intervention requests, in light of our conclusion here with regard to that factor the trial judge may desire to reconsider and evaluate anew applicants' bid for permissive intervention.

*Order of the Circuit Court for Montgomery County affirmed.*

*Costs to be paid by the appellants.*