573 A.2d 109

Walter W. STEWART, et ux.

v.

Vijai K. TULI, et al.

No. 1304, Sept. Term, 1989.

Court of Special Appeals of Maryland.

May 9, 1990.

G. Vann Canada, Jr. (Miles & Stockbridge, on the brief), Rockville, for appellants.

Morton A. Faller (Meyer, Faller, Weisman and Greenburg, P.C., on the brief), Washington, D.C., for appellee, Tuli.

Argued before ALPERT, FISCHER and CATHELL, JJ.

ALPERT, Judge.

Appellee, Vijai K. Tuli ("Tuli"), filed suit against the appellees, William J. Novak and Myra J. Novak (the "Novaks") to specifically enforce a contract for the sale of real property owned by the Novaks. Subsequently, the appellants, Walter W. Stewart and Nancy S. Stewart (the "Stewarts"), filed a Motion to Intervene to assert their rights under a contract for the same real property that is the subject matter of the Tuli Contract. The motion was denied.

On appeal, the Stewarts ask this court to consider the following questions:

    I.  Did the court below err by denying the Stewarts' motion to intervene on the basis that their interests

were identical to those of the Novaks and were already adequately presented?

II. Did the court below err by denying the Stewarts' motion to intervene because the time of performance under the terms of the Stewart contract is indefinite and, consequently, either violative of the rule against perpetuities or constitutes an unreasonable restraint on the alienation of real property?

We hold that the court below erred in denying the Stewarts' Motion to Intervene. Accordingly, we reverse the decision of the trial court.

## *Facts*

The Novaks and Tuli entered into a written Contract of Sale dated January 18, 1989 (the "Tuli Contract"). Tuli agreed to purchase and the Novaks agreed to sell Lots 18, 14, and part of Lot 13, Block B, in "Section 1, Potomac Manors Subdivision," Potomac, Maryland (the "property"). Paragraph 8 of an Addendum to the Tuli Contract provided that the Novaks were entitled to examine certain financial information to be furnished by Tuli. After reviewing the information provided by Tuli, the Novaks informed Tuli that the contract was null and void, alleging that the information was not satisfactory.

The Novaks then entered into a written contract dated February 20, 1989 with the Stewarts for the same property (the "Stewart Contract"). Aware that Tuli might attempt to enforce the Tuli Contract, paragraph 2 of an Addendum to the Stewart Contract provided that if Tuli attempted to keep "his contract alive," the Stewarts did not have to go to settlement until such time as clear title could be granted by the Novaks.

Tuli filed a complaint against the Novaks for specific performance on March 4, 1989. The Stewarts then filed a Motion to Intervene as a party defendant, which was vigorously opposed by the Novaks. On July 31, 1989, the court denied the Stewarts' motion.

*Intervention As of Right*

The Stewarts contend that the court below erred in denying their Motion to Intervene. They assert that they are the owners of a valuable equitable interest in real estate which is not or may not be adequately protected.

In *Hartford Ins. Co. v. Birdsong,* 69 Md.App. 615, 519 A.2d 219 (1987), this Court had an opportunity to examine Md. Rule 2–214(a) and Fed.R.Civ.P. 24(a), from which the former was derived. We then adopted a four-part test devised by the federal appellate courts to determine whether or not intervention as a matter of right is justified in any particular case. These requirements are:

> (1) the application for intervention must be timely; (2) the applicant must have an interest in the subject matter of the action; (3) disposition of the action would at least potentially impair the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by existing parties.

69 Md.App. at 622, 519 A.2d 219.

In the instant case, Tuli does not contend that the Stewarts' Motion to Intervene was untimely. Tuli does contend, however, that while the Stewarts may have an interest in the outcome of the litigation, they are not parties to the Tuli contract and, therefore, have no interest in the subject matter of this specific performance suit. We see no merit in this contention. If Tuli prevails and the court orders specific performance, the Stewarts' interest in their contract is lost. The Stewarts undoubtedly have an interest in the subject matter of the action that could be lost if not protected.

Tuli's major contention, however, is that the Stewarts' interest is already being represented adequately since the Novaks are resisting Tuli's efforts to specifically enforce the Tuli contract. Should the Novaks prevail in the underlying litigation, he argues, the Stewarts' interest will have been protected. Should Tuli prevail, the Stewarts' claim for damages for breach of contract is nonetheless preserved.

In *Maryland Radiological Soc'y, Inc. v. Health Servs. Cost Review Comm'n*, 285 Md. 383, 390, 402 A.2d 907 (1979), the Court of Appeals fashioned the following three-prong test for "interest analysis" to determine whether or not there was adequate representation of a movant's interest: (1) if its interest is not represented or advocated to any degree by an existing party, or if the existing parties all have interests that are adverse to those of the movant, the movant should be permitted to intervene; (2) if the movant's interest is similar, but not identical to that of the existing party, a discriminating judgment is required on the circumstances of the particular case, but the movant ordinarily should be allowed to intervene unless it is clear that the party having a similar interest will provide adequate representation; and (3) if the interest of an existing party and the movant are identical, or if an existing party is charged by law with representing a movant's interest, a compelling showing should be required to demonstrate why this representation is not adequate.

The Stewarts assert that Tuli's interest is adverse to theirs and that the Novaks are not in a position to advocate the Stewarts' rights under the Stewart Contract. Tuli, on the other hand, argues that the Stewarts' interest is identical to the position already being advanced by the Novaks.

We disagree with the position that the Stewarts' interest is identical to the position already advanced by the Novaks in that a successful action by Tuli would lead to differing consequences for the Stewarts and Novaks respectively. It is reasonable to assume that the Novaks, as vendors of real property, seek only to realize the highest profit that circumstances permit. The Stewarts, on the other hand, seek a specific piece of property. Thus, while at present both the Novaks and Stewarts seek to have the Tuli Contract declared null and void, and thus do not have adverse interests, they do not necessarily have the same ultimate objective.

■■■■ Concluding, as we do, that the interests of the Stewarts are similar but not identical to the Novaks, we

now can determine whether the Stewarts have demonstrated that their interest is inadequately represented by the Novaks. We note again that if the movant's interest is similar but not identical to that of the existing party, a discriminating judgment is required on the circumstances of the particular case, but the movant ordinarily should be allowed to intervene unless it is clear that the party having a similar interest will provide adequate representation. *Maryland Radiological Soc'y, supra.* We further note that the burden of showing that existing representation may be inadequate is a minimal one. *Maryland–Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 30 Md.App. 712, 716, 354 A.2d 459 (1976).

■ In *Nuesse v. Camp,* 385 F.2d 694 (D.C.Cir., 1967), the D.C. Circuit Court of Appeals reversed the district court's denial of a motion to intervene in an action by a Wisconsin bank for declaratory and injunctive relief against the United States Comptroller of Currency. The Wisconsin banking commissioner applied to intervene. The court, in holding that the commissioner was entitled to intervention as of right under Rule 24(a),[1] stated that the bank "might conceivably be interested in a future settlement that would soften the impact on its private interest." Thus, he pointed out that "their interest may not coincide." *Nuesse,* 385 F.2d at 703.

The 7th Circuit Court of Appeals, in *Lake Investors Dev. Group v. Egidi Dev. Group,* 715 F.2d 1256 (7th Cir.1983), an action brought by a vendor against a purchaser for breach of a real estate sales contract, reversed the district court's denial of a petition to intervene brought by a holder of a security interest in the contract. The appellate court held that although the vendor had every reason to pursue

---

**1.** Maryland Rule 2–214 is derived from Federal Rule 24 and former Md. Rule 208. Decisions of the federal courts interpreting the federal rule are of considerable precedential value in construing the Maryland rule. *See Maryland Radiological Soc'y, supra,* 285 Md. at 388 n. 5, 402 A.2d 907.

its cause of action in order to recover under the contract, the vendor and the intervenor did not have the same ultimate objective.

In the case *sub judice*, the Stewarts have a valuable contract right which requires protection and which could be extinguished if the Novaks should enter into a settlement with Tuli. At some point during litigation, it may be in the Novaks' best interest to reach a compromise with Tuli and, under the terms of the compromise, agree to convey the real estate to Tuli. It is not necessary that there be a positive showing of inadequacy of representation in order to intervene. It is sufficient that the representation may be inadequate. *Maryland–Nat'l Capital Park & Planning Comm'n*, 30 Md.App. at 717, 354 A.2d 459. We hold, then, that the Stewarts are entitled to intervene as of right.

## Rule Against Perpetuities

Tuli also contends that the Stewarts have no standing to assert any position with respect to an interest in the property because the Stewart Contract is void as a violation of the Rule Against Perpetuities. The Stewart Contract contains a recitation that the Novaks believe that the Tuli Contract has been terminated. The Stewart Contract also provides, however, that in the event that Tuli attempts to enforce his contract, the time for performance under the Stewart Contract will be postponed until the Novaks can convey clear title. Tuli contends that this provision renders the time of performance to be so indefinite as to violate the Rule Against Perpetuities.

The Stewarts initially protest that by raising this issue, Tuli is attempting to litigate the validity and enforceability of the Stewart Contract without permitting the Stewarts to participate in the litigation as parties. The Stewarts' contention is valid. Nevertheless, since we hold that the Stewarts are entitled to intervention as of right, we will address the Rule Against Perpetuities question in order to settle

this issue in the event of future litigation of the Stewart Contract.

As a formulation of the Rule Against Perpetuities, Maryland courts have adopted Professor Gray's statement that "no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Dorado Ltd. Partnership v. Broadneck Dev. Corp.*, 317 Md. 148, 562 A.2d 757 (1989) (quoting Gray, *The Rule Against Perpetuities*, § 329 (4th ed.1942)). In *Dorado*, on which Tuli relies, the Court of Appeals held that where occurrence of a condition precedent to conveyance of real property is beyond the control of the parties, reasonable time for performance, less than the perpetuities period, cannot be implied. In that case, there existed a contract for the sale of real property which was conditioned upon the county's grant of sewer allocation for lots. At that time, there was a county moratorium on sewer allocations. The court held that the contract violated the Rule Against Perpetuities because whether the county might grant such allocation within the perpetuities period was unknown. Relying on *Dorado*, Tuli asserts that the Stewart Contract violates the Rule Against Perpetuities as the delivery of clear title is not certain to happen within the perpetuities period.

*Dorado* is distinguishable. There, the court based its decision on the fact that the contract settlement was dependent not on performance by one of the parties, but on the action of a third party, Anne Arundel County. Thus, the occurrence of the condition precedent was beyond the control of the parties. In the case *sub judice*, the condition precedent to conveyance is judicial determination of the validity of the Tuli Contract. The addendum to the Stewart contract provides as follows:

2. The Purchasers acknowledge that the Seller has declared null and void a prior contract for the sale of the property with a proposed purchaser, Mr. Vijai Tuli. The Purchasers acknowledge that the Sellers have declared the contract null and void and that Mr. Tuli may still

make some attempt at keeping his contract alive. However, the parties acknowledge this contract to be a primary contract and not a backup contract to the other said contract. The Sellers agree to make every attempt to obtain a Release from Mr. Tuli, however the Sellers and Purchasers acknowledge that a Release will not be necessary for terms of enforcement of this contract. *However it is understood and agreed that Purchasers shall not have to go to settlement until such time as clear title can be granted by Sellers, and insured at usual rates.* (As per paragraph 12 of contract)

(Emphasis in original.)

Paragraph 12 is part of a printed form "Resale Contract for Single Family House" recommended by the Montgomery County Board of Realtors, Inc. and provides as follows:

12. TITLE. The property, including personal property which conveys hereunder, is sold free of encumbrances, unless otherwise stated herein. Any financing statements will be paid and released by Seller at time of settlement. Title is to be good of record, merchantable and insurable, subject however to the covenants, rights of way, easements, conditions and restrictions of record, if any, otherwise the deposit is to be returned and sales declared null and void at the option of Purchaser, unless the defects are of such a character that they may be remedied by legal action within a reasonable time. However, Seller and Agent(s) are hereby expressly released from all liability to Purchaser for damages by reason of any defect in the title. In case legal steps are necessary to perfect the title, such action must be taken promptly by Seller at his own expense, whereupon the time herein specified for full settlement by the parties will thereby be extended for the period necessary for such prompt action.

It is manifest that the intent of the grantor must be ascertained before determining whether the Rule Against Perpetuities applies, *In Re Estate of Snyder*, 195 Md. 81, 89, 72 A.2d 757 (1950), and a contract "should be interpreted if feasible to avoid the conclusion that it violates the Rule

Against Perpetuities ... under the doctrine that a construction should be favored which gives effect to intention rather than one which defeats it." 70 C.J.S. *Perpetuities* § 35. It is beyond question that the Novacks, as sellers, were obliged to transfer good and merchantable title to the Stewarts, or obligated to return the deposit which was in the substantial amount of $100,000.00, unless any title defects could be remedied by legal action "within a reasonable time." It is equally clear that the parties were aware of a potential cloud on the title, *i.e.*, the *Tuli* contract, but in any event the parties contemplated and the contract mandated that any title clearing litigation be completed within a reasonable period of time. It would be ridiculous to suggest that a reasonable period of time would exceed a life in being and 21 years.

Tuli further argues, however, that if he prevails in the suit, the Novaks could never deliver clear title to the Stewarts. This possibility, he asserts, makes the conveyance uncertain to ever occur and, thus, violates the Rule Against Perpetuities. We disagree. The purposes of the Rule Against Perpetuities include facilitating the alienation of property and maintaining certainty of title. *Dorado*, 317 Md. at 153, 562 A.2d 757. The contract provision in question serves to maintain certainty of title and thus facilitates alienation. The termination of the litigation, regardless of the outcome, will determine the rights of the parties. If Tuli prevails and obtains specific performance of his contract, the Stewarts' right to enforce their contract will terminate. If the Stewarts and Novaks prevail, the Stewarts' obligation to perform becomes fixed and the terms of the contract become operative. The Rule Against Perpetuities simply does not apply to the contract between the Stewarts and Novaks.

We hold that the Stewarts should be permitted to intervene in the proceeding.

JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEES.