13 A.3d 34

**ENVIRONMENTAL INTEGRITY PROJECT, et al.**

v.

**MIRANT ASH MANAGEMENT, LLC, et al.**

No. 01779, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 29, 2010.

Reconsideration Denied March 10, 2011.

**180**

Jane F. Barrett, Nathaniel Keller, Emily Rohm (Environmental Law Clinic University of Maryland School of Law, on the brief) Baltimore, MD, for appellant.

Deborah E. Jennings (Andrew B. Schatz, DLA Piper LLP, Jacqueline S. Russell, Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, MATRICCIANI and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Appellants, the Environmental Integrity Project ("EIP"), the Potomac Riverkeeper ("PRK"), and several individual Maryland citizens ("Individual Appellants") (collectively, "appellants") appeal the denial of their motion to intervene in the Circuit Court for Charles County. Appellants sought to intervene in an action filed by the Maryland Department of the Environment ("MDE") against Mirant Maryland Ash Management, LLC, and Mirant Mid–Atlantic, LLC (collectively, "Mirant")˙ seeking injunctive relief and civil penalties for alleged violations of the Clean Water Act at one of Mirant's facilities.

Appellants present two issues for our consideration, which we have rephrased as such:

I. Whether the circuit court erred in denying appellants' motion for intervention as a matter of right.

II. Whether the circuit court erred in denying appellants' motion for permissive intervention.

For the reasons set forth below, we answer both questions in the negative, and we affirm the judgment of the circuit court.[1]

## FACTS

Appellees lease and operate two power plants in Southern Maryland, including the Morgantown Generation Station in Morgantown, Maryland. The Morgantown plant generates electricity through the combustion of coal, which produces

---

1. In their brief, appellees have also argued that appellants should be prohibited from recovering attorney's fees. Appellants never addressed this issue in their briefs. Based on our holding, however, we believe this issue is moot, and we decline to answer this question in the present appeal.

waste byproducts (hereinafter referred to as coal combustion byproducts, or "CCBs"), including fly ash.[2] In order to dispose of the fly ash and other waste products created by their power plants, appellees own and operate the Faulkner Fly Ash Storage Facility near La Plata, Maryland.[3] The Faulkner facility was previously owned and operated by the Potomac Electric Power Company (PEPCO).

Appellant Environmental Integrity Project[4] is a nonprofit organization based in Washington, DC, that advocates for the enforcement of environmental laws, focusing on coal-burning plants, refineries, and factory farms. Appellant Potomac Riverkeeper[5] is a nonprofit organization that advocates for the creation of new laws and the enforcement of existing state and federal laws affecting the Potomac River watershed. The five individual appellants are persons whose homes are located within ten to fifteen miles of the Faulkner facility, on either the Wicomico River or Potomac River.

On December 18, 2000, MDE and PEPCO, appellee's predecessor at the Faulkner facility, entered into a Complaint and Consent Order, through which the parties agreed that PEPCO, and subsequently Mirant, would be responsible for installing a water treatment system to address discharges from the fly ash material to surface water and groundwater.[6] Appel-

---

2. Fly ash is only one type of CCB. Other such byproducts generated when coal is burned for electricity include bottom ash, boiler slag, and pozzolan. These substances are filtered by air pollution control devices, and the residue is commonly disposed and stored in facilities like the Faulkner site.

3. The Faulkner facility consists of approximately 900 acres, 180 acres of which has been utilized specifically for the disposal of fly ash, bottom ash, and other CCBs generated by the Morgantown Generation Station.

4. See http://www.environmentalintegrity.org/index.php for more information.

5. See http://www.potomacriverkeeper.org/ for more information.

6. When fly ash and other types of CCBs come into contact with water, leachate is created, which can drain into and pollute groundwater and nearby bodies of water.

lees maintain that this water treatment system was put in place and that it was in conformity with MDE regulations. On April 2, 2008, EIP and PRK sent a letter to Mirant's leadership notifying Mirant of their intent to sue for violations of the Clean Water Act at the Faulkner facility. In its letter, EIP explained that its research indicated that the levels of toxic pollutants being discharged from the facility were in excess of Maryland's water quality criteria, among other violations. On May 29, 2008, MDE filed a civil enforcement action seeking injunctive relief and civil penalties pursuant to Md. Code Ann. (1982, 2007 repl. vol.), Environment Article § 9–339 and § 9–342, stating that the "existing leachate collection and treatment systems" put in place at the Faulkner facility "were insufficient to prevent the migration of pollutants from contaminating groundwater and surface waters."

On August 21, 2008, appellants filed a motion to intervene as a matter of right, pursuant to Md. Rule 2–214(a), or in the alternative, for permissive intervention pursuant to Md. Rule 2–214(b). MDE filed a response in support of appellants' motion to intervene, and appellees filed an opposition thereto. On September 23, 2009, the Circuit Court for Charles County denied the motion to intervene. Appellants timely noted this appeal.[7] Additional facts will be provided as necessary.

## DISCUSSION

### I.

Appellants contend that the circuit court erred in denying their motion to intervene as a matter of right. Appellants argue that they are entitled to intervention as of right because

---

7. Appellants' brief was filed on March 24, 2010. On April 30, 2010, MDE filed a motion for leave to file an appellee's brief, and filed an appellee's brief on June 9, 2010. On June 14, 2010, however, we denied MDE's motion for leave to file an appellee's brief, without prejudice to file an *amicus curiae* brief on or before July 15, 2010. MDE then filed an *amicus* brief on July 14, 2010, supporting appellants' position. Although MDE's appellee brief and its *amicus curiae* brief appear to be substantively the same, we shall consider only those arguments raised in the *amicus* brief.

their motion was timely filed, and because they meet the requirements for intervention. Appellants assert that they have specific interests that will be impacted by the litigation, that the disposition of the action could impair appellants' ability to protect these interests, and that the existing parties do not adequately represent appellants' interests.

■ A circuit court's denial of a motion to intervene is an appealable final order. *Hiyab, Inc. v. Ocean Petroleum, LLC,* 183 Md.App. 1, 9, 959 A.2d 808 (2008). *See also Montgomery County v. Bradford,* 345 Md. 175, 185 n. 1, 691 A.2d 1281 (1997) ("That denial of a motion to intervene is an appealable final order is well settled.").

Md. Rule 2–214(a) governs intervention as a matter of right, and provides:

(a) Of right. Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) *when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.*

(Emphasis added.)

■ Recognizing that previous Maryland case law did not explicitly articulate the appropriate standards for appellate review applicable to motions to intervene, the Court of Appeals recently adopted the standards articulated in federal intervention guidelines. *See Maryland–National Capital Park & Planning Comm'n v. Town of Wash. Grove,* 408 Md. 37, 65, 968 A.2d 552 (2009) (holding that the federal authority decided under Fed.R.Civ.P. 24, which is analogous to Md. Rule 2–214, is consistent with the development of Maryland law on intervention, and adopting the federal standards for appellate review). Under these standards, the denial of a motion to intervene as a matter of right, premised on any ground other than untimeliness, is reviewed *de novo.*

In *Hartford Ins. Co. v. Birdsong,* we set out the four-part test for determining whether a party qualifies for intervention as a matter of right: (1) the application for intervention must be timely; (2) the applicant must have an interest in the subject matter of the action; (3) disposition of the action would at least potentially impair the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by existing parties. 69 Md.App. 615, 622, 519 A.2d 219 (1987) (adopting the federal standards under Fed.R.Civ.P. 24).

(1)

Appellees do not contest the fact that appellants' motion was timely filed.

(2)

■ Once timeliness has been established, appellants must demonstrate that they have an interest in the subject matter of the action. The Court of Appeals described the nature of such an interest in *Maryland–National Capital Park & Planning Comm'n,* 408 Md. at 75, 968 A.2d 552:

> 'The requirement which we have imposed on the applicant for intervention ... is that he have an interest for the protection of which intervention is essential and which is not otherwise protected.' Put another way, 'whether the applicant for intervention has an interest which it is essential to protect may be equated with the requirement ... that he is or may be bound by a judgment in the action.' It is not enough for a person seeking intervention to base its motion on concern that some future action in the proceedings may affect its interests adversely. Seeking intervention on such a basis is 'merely speculative and affords no present basis upon which to become a party to the proceedings.'

(quoting *Citizens Coordinating Committee on Friendship Heights, Inc. v. TKU Associates,* 276 Md. 705, 712, 351 A.2d 133 (1976)).

Appellants contend that they have direct, specific and substantial interests in the subject matter of the action.[8]  Specifically, appellants state that EIP is "interested in ensuring that state and federal water pollution control laws are fully enforced . . . particularly in light of the . . . serious public health and environmental risks associated with hazardous dumping of [CCBs]." Similarly, PRK is said to have "a specific interest in preventing and remediating any pollution of the waters of the Potomac River." Individual appellants Joan Bowling, Samuel Young Bowling, Sr., Edward L. Marshall, and Susanne L. Marshall live and own homes on the Wicomico River, between ten and fifteen miles downstream of the Faulkner facility. Individual appellant Clair Joseph Martin lives and owns a home on the Potomac River, approximately five miles downstream of the Faulkner facility.  Individual appellants state that their ability to fish and recreate on the Wicomico and Potomac Rivers has been negatively impacted.  Some also state that the proximity of the facility has decreased their property values.

Appellees counter that appellants' alleged interests are insufficient to support intervention, "because they are either generalized claims, are not directly related to the transaction that is the subject of the action, or are not recognized interests under Maryland law."  Appellees also argue that appellants have not demonstrated the requisite standing in order to intervene in the action.  In support of this argument, appellees cite *Duckworth v. Deane*, 393 Md. 524, 903 A.2d 883 (2006), in which the Court of Appeals held that in order to

---

8.  Appellants also claim an automatic right of intervention through federal law, citing the federal Clean Water Act, 33 U.S.C. § 1365(b)(1)(B).  The CWA prohibits independent citizen suits where a state "has commenced and is diligently pursuing a civil or criminal action . . . to require compliance," but also provides that *"in any such action in a court of the United States any citizen may intervene as a matter of right."* (Emphasis added.) Because the present litigation was commenced in state court, and is based on state law—specifically Environment Article § 9–339 and § 9–342—however, state law, and not federal law, controls, and neither § 9–339 nor § 9–342 contains an equivalent "automatic intervention" provision.

demonstrate an interest sufficient for intervention, "the disposition of the action must 'directly' impact upon the applicant's interest," and that " 'concerns [which] are indirect, remote, and speculative' are insufficient." *Id.* at 539–40, 903 A.2d 883. In addition, the *Duckworth* Court held that "for intervention under Rule 2–214(a)(2), the applicant's interest must be such that the applicant has standing to be a party . . . [which] ordinarily requires that the outcome of the lawsuit might cause the person to 'suffer [ ] some kind of special damage . . . differing in character and kind from that suffered by the general public.' " *Id.*

The Court of Appeals has also held, in a slightly different context,[9] that property rights alone do not give a party standing. In discussing a party's standing to maintain judicial review of zoning decisions, the Court of Appeals held in *Shore Acres Improv. Asso. v. Anne Arundel County Board of Appeals,* that "the decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally." 251 Md. 310, 317, 247 A.2d 402 (1968) (quoting *DuBay v. Crane,* 240 Md. 180, 213 A.2d 487 (1965)). In *Shore Acres,* the Court held that the plaintiff community association did not have standing to appeal a zoning board decision, where the association's hall and recreation area were located 3,760 feet measured in a straight line, and approximately 9,400 feet by road, from the property in question. *Id.* In so holding, the Court affirmed the circuit court's judgment that "due to the distance of [the association's] property from [the re-zoned] tract," the association was not "especially affected in a way different from that suffered by the public generally." *Id.*

---

9. In both *Shore Acres* and *Sugarloaf,* the Court of Appeals was dealing with challenges to standing for the purpose of obtaining judicial review of administrative agency decisions. The present case addresses standing in the context of intervention. Although different, the standing analysis is helpful to our determination here.

In *Sugarloaf Citizens' Ass'n v. MDE*, 344 Md. 271, 686 A.2d 605 (1996), on the other hand, the Court of Appeals held that a party who could demonstrate "that much higher levels of toxic substances would fall on [their] farm . . . than would fall on properties farther away from the site" *did* have standing as "an aggrieved party" to challenge MDE's issuance of permits for the construction of solid waste incinerators. *Id.* at 299–300, 686 A.2d 605. In *Sugarloaf*, the plaintiffs' property not only adjoined a tract of land containing a waste incineration facility, but the plaintiffs were also able to show that the levels of toxic substances falling on their property were not only greater than properties located further away, but were also outside of "acceptable" limits under government standards. Thus, the harm suffered by the plaintiffs was specific to them and was different from any harm suffered by the general public.

■ Here, the interests claimed by organizational appellants do not appear to be different than and distinct from the interests of the general public in protecting the environment, restoring and safeguarding the natural habitats of the Wicomico and Potomac Rivers, and enforcing state environmental laws. Individual appellants, likewise, have not asserted that they are personally affected in some way that is different from any other residents living within a ten to fifteen mile radius of the plant. Unlike the plaintiffs in *Sugarloaf*, both organizational and individual appellants have asserted interests—like prevention and remediation of pollution in the waters of the Wicomico and Potomac Rivers, as well as fishing, sailing, studying nature and otherwise recreating on those waterways—that are shared by many members of the general public and are not specific to appellants. Therefore, we believe that although appellants certainly have a general interest in the litigation, their interest is insufficient to give them standing to intervene under Rule 2–214(a) and the case law cited above.[10]

---

**10.** Although not addressed in the parties' briefs, we note that Maryland has enacted the Environmental Standing Act, Md.Code (1973, 2000

**(3)**

Appellants next contend that the disposition of the action would impair their ability to protect these interests if they are not permitted to intervene in this action. Specifically, appellants argue that they may face issues of *res judicata,* because their claims "are nearly identical to the claims MDE alleged in its complaint and involve common questions of law and fact." [11] Appellees counter that appellants "fail to state any specific claims that will be impaired, asserting only a generalized claim." And while appellees agree that appellants would face *res judicata* if they tried to re-litigate their claims independently, appellees argue that the issue is moot given appellants' lack of standing.

■ We agree. Failure to satisfy any one of the four requirements for intervention, as laid out above, is sufficient to warrant denial of a motion to intervene as of right. *Birdsong,* 69 Md.App. at 622–23, 519 A.2d 219 (adopting language from *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Services, Ltd.,* 736 F.2d 384, 386 (1984)). Therefore, based on our holding that appellants have failed to establish interests in the litigation sufficient to give them standing, the fact that they could face issues of *res judicata* does not require intervention.

**(4)**

Appellants also contend that their interests are not adequately represented by the existing parties because they are adverse to, distinct from, and much narrower in scope that the

---

repl. vol.) Natural Resources Art. §§ 1–501 *et seq.* for the express purpose of expanding its citizens' rights to standing to challenge actions harmful to the physical environment. The Act does not specifically reference intervention in such cases.

**11.** As discussed in note 10, *supra,* appellants also argue that they have potential claims arising out of the CWA. With regard to *res judicata,* appellants contend that they could be barred from bringing a subsequent lawsuit under the CWA in federal court "due to the strong presumption that a state will diligently prosecute an enforcement action." Given our holding in section (2), above, and our reasoning in section (3), we need not further address this argument.

interests of MDE. Appellees, on the other hand, argue that MDE is charged by law with representing appellants' interests, and therefore, their interests are adequately protected. In its *amicus* brief, MDE agrees with appellants that MDE's interests are "not necessarily the same" because some of the allegations in MDE's complaint "are potentially inconsistent with appellants' interests."

In *Maryland Radiological Soc'y, Inc. v. Health Servs. Cost Review Comm'n,* 285 Md. 383, 402 A.2d 907 (1979), the Court of Appeals fashioned a three-prong test for an "interest analysis" to determine whether or not there was adequate representation of a movant's interest:

(1) if the movant's interest is not represented or advocated to any degree by an existing party, or if the existing parties all have interests that are adverse to those of the movant, the movant should be permitted to intervene;

(2) if the movant's interest is similar, but not identical to that of the existing party, a discriminating judgment is required on the circumstances of the particular case, but the movant ordinarily should be allowed to intervene unless it is clear that the party having a similar interest will provide adequate representation; and

(3) if the interest of an existing party and the movant are identical, or if an existing party is charged by law with representing a movant's interest, a compelling showing should be required to demonstrate why this representation is not adequate.

*Id.* at 390, 402 A.2d 907.

■ Here, Md.Code, Environment Art. § 9–339 and § 9–342,[12] which provide the basis of MDE's complaint, charge

---

12. § 9–339(a) provides:

(a) In general.—*The Department may bring an action for an injunction* against any person who violates any provision of this subtitle or any rule, regulation, order, or permit adopted or issued by the Department under this subtitle. (Emphasis added.)
§ 9–342(a) provides:

MDE with enforcement of the State's water pollution control laws. Appellants argue that MDE is charged with protection of the entire state, and thus of a much wider range of interests, than those held by appellants. Nonetheless, we believe that the third prong from *Maryland Radiological Soc'y* applies, meaning that appellants must overcome the presumption that MDE's representation is adequate by making a compelling showing of inadequacy.

Appellants argue that their interests are not adequately represented by MDE because the relief being sought by MDE (mainly, installation of proper water treatment plans at the Faulkner facility) is different than the relief sought by appellants (the complete closing of the facility). This, appellants contend, is because MDE's paramount concern is achieving substantial future compliance with state law, while appellants seek closing of the Faulkner facility, or at a minimum, remediation of the hazards and pollution caused by existing fly ash and run-off. Ultimately, however, appellants' and MDE's goals of ensuring the water quality of the Wicomico and Potomac Rivers, safeguarding the viability of the surrounding wildlife habitats, and generally protecting the environment are largely similar and are not adverse. As the Court of Appeals explained in *Maryland Radiological Soc.*, a party is adequately represented, even if its interests are not precisely the same as the parties already in the litigation when, "as far as the unresolved portion of [the] litigation is concerned, there is every indication of a compatibility of objective, and of efforts to obtain that goal." 285 Md. at 392, 402 A.2d 907. Moreover, as explained previously, MDE is charged by law with protecting the very environmental interests that appellants have claimed. And despite appellants' assertion that MDE protects

---

(a) Civil action.—In addition to being subject to an injunctive action under this subtitle, a person who violates any provision of this subtitle or of any rule, regulation, order, or permit adopted or issued under this subtitle is liable to a civil penalty not exceeding $10,000, *to be collected in a civil action brought by the Department.* Each day a violation occurs is a separate violation under this subsection. (Emphasis added.)

a much wider range of interests, appellants—as discussed in detail above—have failed to establish interests that are different than those of the general public. We therefore believe that appellants' interests are adequately protected by MDE in this litigation.

## II.

■ Appellants, alternatively, argue that the circuit court erred in denying their motion for permissive intervention, because they timely filed their motion to intervene, they claim questions of law and fact in common with the action, and intervention will not cause any undue delay or prejudice to the existing parties.

■ We review the denial of permissive intervention for abuse of discretion. *Maryland–National Capital Park & Planning Comm'n*, 408 Md. at 65, 968 A.2d 552 (citing *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir.2008) and adopting the federal standards under F.R.C.P. 24). There is an abuse of discretion " 'where no reasonable person would take the view adopted by the [trial] court,'or when the court acts 'without reference to any guiding rules or principles.' " *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110 (1997) (quoting *North v. North*, 102 Md.App. 1, 13, 648 A.2d 1025 (1994)). An abuse of discretion may also be found "where the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court,' or when the ruling is 'violative of fact and logic.' " *Id.*

Md. Rule 2–214 governs permissive intervention, and provides, in part:

(b) Permissive.

(1) Generally. Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action.

✳      ✳      ✳

(3) Considerations. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

With regard to the first prong, appellants argue that both they and MDE "seek to enforce the CWA and ensure Mirant's compliance with the law." Appellees counter that MDE has been vested with the exclusive authority to institute civil enforcement actions under Maryland law, and therefore appellant's claims are preempted by MDE. As to the second prong, appellants argue that intervention will not cause any undue delay or prejudice to existing parties, because "the proceedings in this case have not advanced significantly and have made almost no substantive progress." Appellees contend that intervention could cause undue delay, especially if a potential settlement were reached between MDE and Mirant, and appellants belatedly intervened and disagreed with its terms.

Appellants' claims arise out of Title 9, Subtitle 3 of the Environmental Article. As discussed in Section I, above, however, the relevant sections of the subtitle authorize MDE—and only MDE—to institute civil actions against violators of the subtitle's clean water laws. In addition, while we cannot speculate about the potential difficulties that could arise in settlement of the lawsuit if appellants were permitted to intervene, the burden is not on appellees to demonstrate that undue delay and/or prejudice would occur if permissive intervention were granted. Rather, the burden is on appellants to establish an abuse of discretion by the circuit court. Appellants have failed to meet this burden, because they have not shown that the circuit court's denial of their motion for permissive intervention was "clearly against the logic and effect of facts and inferences before the court," or that it was "violative of fact and logic." We therefore hold that the circuit court did not abuse its discretion in denying appellant's motion for permissive intervention.

JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

