ELLEN P. ARNOLD *v.* EVANGELOS P. CARAFIDES

[No. 143, September Term, 1977.]

*Decided April 7, 1978.*

376

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Kevin M. O'Connell,* with whom were *Betts, Clogg & Murdock* on the brief, for appellant.

*Elbert R. Shore, Jr.,* with whom were *John T. Bell, Frank S. Cornelius* and *Bell & Cornelius* and *Alfred L. Rehder* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that a motion to set aside a tax sale decree made out a case of constructive fraud. Accordingly, we shall be obliged to reverse a refusal to reopen a proceeding brought by appellee, Evangelos P. Carafides (Carafides), under Maryland's tax sale statute, Maryland Code (1957) Art. 81, §§ 70-123, to foreclose the equity of redemption of appellant, Ellen P. Arnold (Mrs. Arnold), in certain land of hers in Montgomery County.[1]

---

1. All references to sections of the statutes in this opinion are to sections of Art. 81.

*The Law*

Maryland Rule BS40 provides:

"The procedure for tax sales, including provisions for the order of publication, shall be in accordance with Code, Article 81, Sections 70 to 123."

Section 97 provides that the sections of the subtitle relative to foreclosure of rights of redemption by equity suits are to "be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the equity courts and for the decreeing of marketable titles to property sold by the collector." This was said by our predecessors in *Thomas v. Kolker,* 195 Md. 470, 475, 73 A. 2d 886 (1950), to be a declaration by the General Assembly "that the public interest in marketable titles to property purchased at tax sales outweighs considerations of individual hardship in every case, except upon a showing of lack of jurisdiction or fraud in the conduct of the foreclosure."

Under § 100 a suit to foreclose the equity of redemption of the owners of land sold at tax sales may be filed "at any time after the expiration of one year and a day from the date of sale in any of the counties" of this State, but "within two years of the date of the certificate of sale ...." The proceeding is to be brought "in the equity court of the county in which the land is located ...." § 102. Section 103 governs parties to the proceeding. The plaintiff is to be the holder of the certificate of sale. The defendants are to include the owner of the land "as disclosed by a search of the land records of the county, of the records of the register of wills of the county, and of the records of any court of law or equity of the county." In addition, if the property is subject to a ground rent, "the parties defendant shall be the owner of the fee-simple title and the owner of the leasehold title as disclosed by a search" of the same records. Any mortgagee of the land or his assignee of record "named as such in any unreleased mortgage recorded among the land records of the county" is to be included among the parties defendant.

Service of notice is governed by § 106. A subpoena is to be

issued "for all parties defendant named in the said bill who are residents of this State and upon such bill the same process by summons, notice or otherwise shall be had to procure the answer and appearance of all such defendants as is had in other cases in equity," except as otherwise provided in the subtitle relative to tax sales. A notice by publication is required by § 107 to be issued at the same time the subpoena is issued under § 106. That notice is to be "directed to all parties defendant, known and unknown, naming the known parties defendant and including the unknown parties defendant and all other persons having an interest in the property by the designations" for which provision has previously been made. It is to "issue in the manner now, or which may be hereafter prescribed by law, for the issuance of an order of publication against nonresidents," except as otherwise provided in the subtitle relative to tax sales, "and shall be published and the publication thereof proved as in cases of orders of publication against nonresidents." In *Hauver v. Dorsey,* 228 Md. 499, 502, 180 A. 2d 475 (1962), our predecessors said they thought "it was the purpose and effect of the language of Art. 81, sec. 107 . . . to adopt whatever is the current legal procedure in regard to publication against nonresidents." Rule 105 as it then existed was held applicable in that case.

Rule 105 concerns service of process where there is in rem or quasi in rem jurisdiction. In *Sanchez v. James,* 209 Md. 266, 270, 120 A. 2d 836 (1956), this Court said, "The law is established that tax foreclosure proceedings are *in rem* and not *in personam.*" Rule 105 b pertains to publication when the whereabouts of a defendant are unknown. In that case the court may direct service of process by publication if "the plaintiff files a statement under oath or produces other sworn evidence setting forth a circumstantial account of the efforts made to locate the defendant which satisfies the court that reasonable efforts to locate the defendant have been made in good faith . . . ." Rule 111 provides that in any action in which rights relating to land are involved a defendant may be proceeded against pursuant to Rule 105 or, if his whereabouts are unknown, in lieu of the methods in Rule 105 b "the court

may order the sheriff to set up a copy of the order of publication upon the land." Upon proof "of the fact and date of posting ... made by certificate of the sheriff filed in the proceeding" such service of process "shall be in all respects as effectual to bind the land and to affect the title thereto as if personal service had been made upon such defendant," with an exception not here pertinent.

Under § 113 no proceeding may be brought to reopen any final decree entered in a tax sale case such as this "except on the ground of lack of jurisdiction or fraud in the conduct of the proceedings to foreclose," with the proviso "that no reopening of any final decree on the ground of constructive fraud in the conduct of the proceedings to foreclose shall be entertained unless the application therefor ... is made within one year from the date of the final decree."

### This Case

Carafides purchased this and another piece of property at a tax sale in Montgomery County on June 10, 1974. Within the time limited by § 100, he filed his bill of complaint to foreclose the equity of redemption of Mrs. Arnold and of the owner of the other parcel.[2] In accordance with § 102 the bill of complaint contains a description of the land in question "in substantially the same form as the description appearing on the collector's tax roll" with the addition, however, of a reference to the liber and folio at which the deed to Mrs. Arnold is recorded. The address of Mrs. Arnold was listed in the bill of complaint as "unknown." [3] An order of publication was passed, purportedly in the form required by § 107. However, it listed the parties defendant only as "Crispin Corporation et al.," Crispin being the owner of the other parcel of land in the proceeding.[4] The order was published in a local newspaper. No attempt was made at that time to

---

2. The joinder of the owners of more than one parcel in the same foreclosure proceeding is permitted by § 108.

3. Curiously, Carafides executed a military affidavit in which he said that he *knew* Mrs. Arnold, and that "to the best of his information," she was not in the military service, etc.

4. Crispin Corporation was ultimately dismissed as a party defendant, having redeemed its property.

proceed against Mrs. Arnold by publication. No subpoena was ever issued for her.

Carafides sought a decree pro confesso against Mrs. Arnold. The circuit judge to whom the petition was submitted "decline[d] to enter the 'decree pro confesso' submitted" because, among other reasons, service upon Mrs. Arnold "appear[ed] to be defective," referring to §§ 106 and 107 and Rule 105. Counsel for Carafides then submitted an affidavit which reads in its entirety:

> *"AFFIDAVIT PURSUANT TO MARYLAND RULE 105*
>
> "I HEREBY CERTIFY that I have personal knowledge of the facts contained herein and am competent to testify concerning the same.
>
> "I am counsel for the Plaintiff in the above entitled case; that I have made reasonable and diligent efforts to identify and locate the Defendant, Ellen P. Arnold, by investigation through local directories and by sending the attached letter, both by first and third class mail, to her last known address as it appears in the County Assessments Office. The letter was returned marked 'Addressee Unknown'; that I know of no person who might reasonably have information as to the Defendant's whereabouts.
>
> "I DO SOLEMNLY declare and affirm, under penalties of perjury, that the contents of the aforegoing Affidavit are true and correct."

The address to which reference was made was "5530 Wisconsin Avenue, Chevy Chase, Maryland 20015." He appended to his affidavit a copy of an envelope, returned by the post office, which had been sent to Mrs. Arnold at that address under date of March 18, 1976, together with copy of its contents. He then made a motion "pursuant to Maryland Rule 111 . . . for leave to proceed by publication against Ellen P. Arnold, Defendant, in accordance with Maryland Rule 105 on grounds that this is an action in which rights relating to land are involved . . . and the whereabouts of Defendant,

Ellen P. Arnold, are unknown." An order was then passed directing "that process be served on the Defendant, Ellen P. Arnold" by the sheriff's "causing a copy of the Order of Publication, Bill of Complaint to Foreclose Right of Redemption, and Summons to be set up upon the land" here involved. This was done. On August 24, 1976, a decree was entered foreclosing the equity of redemption of Mrs. Arnold.

On March 22, 1977, Mrs. Arnold filed a petition to vacate the decree. She alleged, among other things, that the deed to her of the property in question had been prepared by the attorneys representing her in the petition to vacate; that the name and address of that law firm appeared on the deed; that her "address . . . on the tax records of Montgomery County was given as 5530 Wisconsin Avenue, Chevy Chase, Maryland, which is the address of one Thomas P. Brown, III, Esquire, attorney-of-record for [her] in the administration proceedings of the Estate of her late father, Drew Pearson, as shown in the Office of the Register of Wills" for Montgomery County; that these attorneys "might reasonably have been able to provide information to counsel for Plaintiff as to [her] actual whereabouts but counsel for Plaintiff nevertheless failed to contact any of the aforesaid attorneys"; and that "counsel for Plaintiff thus technically failed to comply with the requirements of Maryland Rule 105 and his failure to do so constitutes 'constructive fraud' and furnishes grounds sufficient for [the Circuit Court for Montgomery County] to reopen and set aside the aforesaid decree of foreclosure entered against [her]." Appended to the petition was a copy of the deed to Mrs. Arnold. The name and address of the law firm currently representing her was imprinted on the front of the deed. Directions appeared on the deed to the effect that after recordation it should be mailed to:

"The Grantee
c/o Mr. Thomas P. Brown, III
5530 Wisconsin Avenue
Chevy Chase, Maryland 20015"

The grantor in the deed was Luvie Moore Pearson, said by that instrument to be devisee under the last will and

testament of Drew Pearson, deceased, "as shown in the Office of the Register of Wills for Montgomery County, Maryland, in Case Number 19295, the said Drew Pearson having departed this life on or about September 1, 1969...." The deed was dated November 6, 1972. The land conveyed, said to comprise 5.4591 acres of land, was said to be a part of the land conveyed by a 1951 deed there mentioned to Drew Pearson. Stamped on the back of the deed at a point below the certification that taxes had been paid and above a certification relative to transfer on the assessment records appears "TRANSFER WITHOUT CONSIDERATION" and a signature. Under the practice then prevailing in the offices of the clerks of various circuit courts, stamps were affixed in proportion to the consideration. No stamps appear on the deed, nor does an imprinting from a cash register appear relative to payment of tax in proportion to consideration, as would be the case under the method now used by such clerks' offices. The margin on the face of the deed has in it:

"NO TITLE EXAMINATION
NO CONSIDERATION."

This appears to have been rubber stamped, perhaps placed by counsel.[5]

Carafides interposed a demurrer to Mrs. Arnold's petition to vacate the decree. The trial court sustained the demurrer and dismissed the petition without leave to amend. An appeal was entered to the Court of Special Appeals. We granted certiorari prior to consideration of this case by that court.

This being an appeal from the sustaining of a demurrer, we are bound on appeal, as was the chancellor, to assume as true all well pleaded facts in the petition and attached exhibit, together with any reasonable inferences which might be drawn from those facts. *Zion Evang. Luth. Ch. v. St. Hwy. Adm.,* 276 Md. 630, 632, 350 A. 2d 125 (1976), and *Citizens P. & H. Ass'n v. County Exec.,* 273 Md. 333, 337-38, 329 A. 2d 681 (1974), and cases there cited.

---

5. Deeds in Montgomery County are recorded by photography. Thus, anything which appears on the original deed should appear among the land records. A certified copy of the deed as recorded was not submitted.

The depth of search required by § 103 is more than a perfunctory one, as indicated by references in that section to property subject to a ground rent and to the requirement that the holder of any unreleased mortgage be made a party. Such a search as is required by that section certainly would have first required an examination of the deed under which Mrs. Arnold held title, a deed which on the face of it gave her address as in care of Thomas P. Brown at the Wisconsin Avenue address. We may infer that this deed was seen by a title searcher, since, as previously noted, the bill of complaint refers to the liber and folio at which this deed is recorded. A careful title searcher could not have satisfied himself that there was no mortgage on this property simply by running Mrs. Arnold as a grantor through the indices to the Montgomery County land records from the time of the conveyance to her. By the endorsement on the deed and by the absence of stamps or any other indication of a payment of tax relative to consideration, such a searcher would have known that no consideration passed. A careful title searcher inevitably would have gone to the estate of Mr. Pearson, out of which the land came, to be certain whether the records pertaining to his estate showed a debt in the nature of an unreleased mortgage on this property to which the land conveyed was to be subject. The records relative to that estate would have shown the address of Mrs. Arnold to which notices in connection with the estate were to be sent. *See* Code (1974) § 7-104, Estates and Trusts Article.

In order for in rem jurisdiction to be obtained here it was necessary that there be compliance with the bases provided in the rules for obtaining such jurisdiction. A necessary predicate for jurisdiction was the requirement of Rule 105 that before a court should order service of process by publication the plaintiff was mandated to file "a statement under oath" or to produce "other sworn evidence setting forth a circumstantial account of [his] efforts made to locate the defendant" which would satisfy "the court that reasonable efforts to locate the defendant ha[d] been made in good faith . . . ."

Here the efforts by Carafides to locate Mrs. Arnold are

confined to "investigation through local directories and by sending" the letter in question to the address on Wisconsin Avenue without stating that it was in care of the individual specifically noted in the deed which plaintiff or his agent had been mandated to examine and presumably did examine. We are not told what "local directories" were examined. The facts which Mrs. Arnold's motion indicates were available to any individual who obeyed the mandates of the statute relative to examination of the public records of Montgomery County, are so extreme, if proven, as to establish that Carafides here obtained in rem jurisdiction and, therefore, the foreclosure decree by constructive fraud. *See Jannenga v. Johnson,* 243 Md. 1, 4-6, 220 A. 2d 89 (1966). Hence, the trial judge should have set the matter for trial and thus provided Mrs. Arnold with an opportunity to prove the allegations contained in her motion to set aside the decree.

> *Judgment reversed and case remanded to the Circuit Court for Montgomery County for trial; costs to abide the final result.*