819.2d 1129

CITY OF COLLEGE PARK

v.

Alvin JENKINS.

No. 2357, Sept. Term, 2001.

Court of Special Appeals of Maryland.

March 27, 2003.

---

256

Suellen M. Ferguson (Levan, Colaresi, Ferguson & Levin, P.A. on the brief), Columbia, for appellant.

Richard C. Daniels (Daniels & Daniels and Walter W. Green on the brief), College Park, for appellee.

Argued before JAMES R. EYLER, SONNER and CHARLES E. MOYLAN, JR. (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

Alvin F. Jenkins, appellee, filed two separate actions to quiet title in the Circuit Court for Prince George's County, claiming that he had acquired title to certain property by adverse possession. Appellee filed affidavits stating that no other persons claimed a right to the property, that all persons who appeared of record to have an interest in the property were named as defendants, and that their whereabouts were unknown. Consequently, pursuant to Maryland Rule 2–122, process was served by publication. After the time for responding to the complaints had expired, the court entered judgments by default.

More than 30 days after each judgment was entered, the City of College Park, appellant, filed motions to intervene, pursuant to Rule 2–214, and motions to vacate the judgments, pursuant to Rule 2–535(b). Appellant alleged that it had an interest in the property and that the judgments should be vacated because of extrinsic fraud, based on appellee's knowledge of appellant's interest and failure to include appellant as a party. According to appellant, the property in question lies

within a right of way ("the railway right of way"), formerly used for transportation purposes, and acquired by appellant for the purpose of constructing a hiker/biker trail.

The circuit court denied the motions. We shall vacate the circuit court's opinion and order dated December 13, 2001, and remand for further proceedings.

## Factual Background

On July 3, 1997, appellee filed a complaint to quiet title in circuit court. Appellee named as defendants the successors and assigns of Filmore Beall and James C. Rogers, trustees; the heirs, successors, personal representatives, devisees, and assigns of Francis Shanabrooke; and any and all persons claiming an interest in certain property. The property was identified as 0.1145 acres, "being part of the railroad bed adjacent to lot 1, Central Heights Subdivision as recorded in JB No. 10 at folio 276 and re-recorded in Plat Book 'A' at folio 55 among the Land Records of Prince George's County," and was described by metes and bounds in an attached exhibit. The exhibit was prepared by William L. Machen, a registered land surveyor. Appellee alleged that, according to the land records, legal title to the property was conveyed to Filmore Beall and James C. Rogers from City and Suburban Railway and Alan L. McDermott, receiver, by deed dated October 22, 1903, and recorded in liber 17, folio 44 ("October 1903 deed"). Beall and Rogers were appointed trustees of the estate of Francis Shanabrooke in June 1903, by decree of the Circuit Court for Prince George's County, in *Long v. Long,* Equity no. 2959. By affidavit, appellee asserted that no other persons claimed a right to the property and that the whereabouts of the defendants were unknown.

After service of process by publication, no response having been filed, appellee sought and obtained an order of default, entered on November 1, 1997, and a judgment by default, entered on December 10, 1997.

On April 17, 1998, appellee filed a second complaint to quiet title in the Circuit Court for Prince George's County with

respect to another parcel contiguous to the first parcel. This parcel, described by metes and bounds, contained 0.0455 acres of land. The allegations and the named defendants were the same as in the first action. After service by publication, and in the absence of a response to the Complaint, the court, on March 3, 1998, entered an order of default, and on May 13, 1999, judgment by default.

The parcels described in the two actions were contiguous to property previously acquired by appellee by deed. In both actions, appellee alleged that the named defendants were identified based on the last interest of record pertaining to the property in question. According to appellee, this showed title in the trustees of the estate of Francis Shanabrooke by virtue of the October 1903 deed.

According to appellant, the properties described in the actions to quiet title lie within the railway right of way, but the property described in the October 1903 deed does not lie within the railway right of way. In other words, appellant asserts that the complaints filed by appellee described parcels of property that are different from the property conveyed by the October 1903 deed.

On April 8, 1997, appellant acquired the railway right of way by quitclaim deed from The Bank of New York as successor trustee of the Riders' Fund Trust. The deed was recorded on April 21, 1997. Appellant asserts that the conveyancer was a successor in interest to City and Suburban Railway. Appellant further asserts that the property in question was owned by City and Suburban Railway, but was retained, and as previously mentioned, was not conveyed as part of the October 1903 deed.[1]

---

1. Appellant's allegation that the October 1903 deed does not cover land within the railway right of way is supported by the following assertions. First, appellant alleges that the October 1903 deed recites that Francis Shanabrooke had conveyed a certain piece of property, described as Lot 5, to both the Railway and to one Horace Miller. When the Railway realized that part of its property had been compromised, it purchased the remaining part of Lot 5 from Mr. Miller and sued the Estate of Shanabrook to require it to buy back the part of Lot 5 that the

On June 15, 2001, appellant filed a motion to intervene and to vacate judgment in both of appellee's quiet title actions. The motion to intervene was filed pursuant to Rule 2–214, and the motion to vacate judgment was filed pursuant to Rule 2–535(b). At or about the same time, appellant filed a complaint to quiet title with respect to the property in question, naming appellee as a defendant. The quiet title action initiated by appellant is not before us.

Appellant requested that it be permitted to intervene in appellee's actions, that all three actions be consolidated, and that after the completion of discovery, its motion to vacate be heard along with its action to quiet title. The circuit court consolidated appellant's motions regarding the actions instituted by appellee, but denied the request to consolidate those actions with appellant's quiet title action.

The circuit court conducted an evidentiary proceeding with respect to appellant's motions. In an opinion dated December 13, 2001, the court held that appellant had to satisfy Rule 2–535(b) before it could intervene, and that it failed to satisfy that rule. In pertinent part, the court stated:

> The City contends that Jenkins' failure to name the City as a party or an interested party constitutes fraud.... This allegation does not constitute an act of extrinsic fraud within the context of Rule 2–535. The City offered no evidence as to Jenkins' chain of title. For the City to prevail, it would have to show that Jenkins' chain of title revealed an ownership interest in the City and that Jenkins made false representations to the Court despite his knowledge of the City's ownership. The City had several opportunities to challenge Jenkins' action to quiet title and assert its interest in either or both parcels of land. This is evident by several publications associated with the filing of the action to quiet title.

---

Railway did not need. As a result, the Railway owned the property within the right of way, and the Estate owned part of the property, but not property within the right of way. Appellant alleges that the Estate's purchase is reflected in the October 1903 deed.

Following the court's denial of appellant's motions, this appeal was timely filed.

## Questions Presented and Parties' Contentions

The following questions, as phrased by appellant, were presented for our review.

1. Did the trial court err in requiring the appellant to satisfy the requirements of Rule 2–535, requiring a showing of fraud, mistake, or irregularity, before allowing appellant to intervene?

2. Was the filing of a deed sufficient notice to the appellee to support a finding of fraud under Rule 2–535?

Appellant contends that the court erred (1) in not permitting it to intervene prior to requiring a showing under Rule 2–535(b), and (2) assuming that it was required to make such a showing, in holding that it failed to establish fraud. In support of the latter contention, appellant asserts that its evidence proved that the property in question is within the railway right of way, was not part of the property conveyed by the October 1903 deed, and that the railway property was conveyed to appellant by deed, which was recorded prior to the initiation of appellee's actions.

Appellee contends that appellant was not entitled to intervene because it was charged with notice of appellee's pending actions, by virtue of publication, and because appellant had actual notice of the pending actions. Consequently, the motion to intervene was not timely. In addition, appellee contends that appellant did not show that it had an interest in the property in question because it failed to prove that the property in question was not part of the property conveyed by the October 1903 deed. Finally, appellee argues that appellant failed to show fraud.

## Discussion

Appellant challenges the circuit court's denial of its motions to intervene and its motion to vacate the judgments in appel-

lee's quiet title actions. Rule 2–214, which outlines the requirements for intervention, provides in pertinent part:

(a) **Of right.** Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

Md. Rule 2–214 (2003). Rule 2–535, which explains the revisory power of a court over a judgment, provides, in pertinent part:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534.

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

Md. Rule 2–535 (2003). Both of these rules have been the subject of much case law. Those cases will be discussed below.

In denying appellant's motions, the circuit court decided the Rule 2–535 question but treated the ability to intervene as being dependent upon the ability to vacate the judgment. While the court held that appellant had not proved extrinsic fraud, because there were no express findings of fact, we cannot discern whether that conclusion was based on implied findings of fact determined adversely to appellant, or whether the court accepted appellant's evidence and assertions as accurate, but determined that the facts did not amount to extrinsic fraud as a matter of law.

This Court cannot resolve the factual questions that underlie appellant's motions, and consequently, we shall remand the case to the circuit court for further proceedings. We offer the following comments as guidance on remand.

*Intervention*

■ Generally, a motion to intervene coupled with a substantive motion should be treated as a two-step process, with the first step being determination of the threshold issue of whether the petitioner has the right to intervene. *See Office of People's Counsel v. Advance Mobilehome Corp.,* 75 Md.App. 39, 42 n. 2, 540 A.2d 151 (1988) (explaining that the motion to alter or amend the judgment was not officially filed until the court granted the motion to intervene). If the motion to intervene is granted, the court then addresses the substantive motion. *Id.* As explained below, for practical reasons, the general two-step process may not be an efficient way for the court to proceed in this case after remand. However, we will address the intervention issue before we discuss the law pertaining to the motions to vacate.

■ As previously mentioned, Rule 2–214 governs the right to intervene in Maryland. In reviewing the denial of a motion to intervene, this Court must determine whether the lower court committed error. *Chapman v. Kamara,* 118 Md.App. 418, 427, 702 A.2d 977 (1997). In the present case, we cannot determine whether the lower court committed error because the relevant factors relating to intervention were not addressed. Instead, the court treated the right to intervene as being dependent upon satisfying Rule 2–535(b). Because the issue of intervention will have to be addressed on remand, we shall comment on the relevant factors.

■ In *Chapman v. Kamara,* 118 Md.App. 418, 702 A.2d 977 (1997), we outlined the four requirements for intervention as of right: (1) the application for intervention must be timely; (2) the applicant must have an interest in the subject matter of the action; (3) the disposition of the action would at least potentially impair the applicant's ability to protect its interest;

and (4) the applicant's interest must be inadequately represented by existing parties. *Id.* at 427, 702 A.2d 977 (citing *Pharmaceia ENI Diagnostics, Inc. v. Washington Suburban Sanitary Comm'n*, 85 Md.App. 555, 566, 584 A.2d 714 (1991), and *Hartford Ins. Co. v. Birdsong*, 69 Md.App. 615, 622, 519 A.2d 219 (1987)).

Before we address the timeliness issue, we consider the other three factors and, based on the pleadings, it appears that appellant has fulfilled all three. In *First Penn–Pacific Life Ins. Co. v. Evans*, 200 F.R.D. 532 (D.Md.2001), the United States District Court for the District of Maryland explained that the would-be intervenor bears the burden of demonstrating that intervention is appropriate, but also pointed out that the issue of cognizable interest should be decided on the pleadings, and not on whether the movant is likely to prevail on the merits. *Id.* at 536.[2]

First, appellant's claim that appellee's quiet title actions adjudicated the ownership rights of land to which appellant claims title clearly satisfies the element requiring that appellant have an interest in the subject matter. *See Chapman*, 118 Md.App. at 428, 702 A.2d 977 (explaining that "[o]ur precedents on the sufficiency of an interest have tended to ask the question of whether the claimed interest 'is essential to protect and ... is not otherwise protected' ") (citing *Citizens Coordinating Comm. on Friendship Heights, Inc. v. TKU Assocs.*, 276 Md. 705, 712, 351 A.2d 133 (1976), *Shenk v. Maryland Dist. Sav. & Loan Co.*, 235 Md. 326, 326, 201 A.2d 498 (1964); and *Hartford Ins. Co. v. Birdsong*, 69 Md.App. at 626, 519 A.2d 219). Second, appellant has also successfully demonstrated that the disposition of the quiet title actions impaired its ability to protect its ownership interest in the land. *Chapman*, 118 Md.App. at 428, 702 A.2d 977 (requiring only that applicant establish that the disposition *may impair*

---

2. Rule 2–214 was modeled after Rule 24 of the Federal Rules of Civil Procedure, and therefore, federal cases interpreting its federal counterpart have precedential value. *See Maryland Radiological Society v. Health Services*, 285 Md. 383, 388, 402 A.2d 907 (1979).

its ability to protect its interest) (emphasis added). Next, using the "interest-analysis" test set forth in *Maryland Radiological*, it is clear that appellant demonstrated that its interests were not adequately represented by the existing parties, given that its interests are directly adverse to appellee's position in seeking to quiet title. *See Maryland Radiological*, 285 Md. at 390–92, 402 A.2d 907 (requiring a comparison of the interest of the would-be intervenor with that of the existing parties).

█ Finally, the timeliness of a motion to intervene depends on the individual circumstances of each case, which usually involve consideration of four factors: (1) the purpose for which intervention is sought; (2) the probability of prejudice to the parties already in the case; (3) the extent to which the proceedings have progressed when the movant applies to intervene; and (4) the reason or reasons for the delay in seeking intervention. *Id.* at 388–89, 402 A.2d 907. With respect to the timeliness of appellant's motion, appellee asserts that appellant had actual knowledge of appellee's claim of ownership of the land in question because of information given to one of its councilmen, its planning director, and its attorney approximately two years prior to the time appellant filed its motions.[3] Appellant denies that it had actual knowledge, thus creating a factual issue.

Because the circuit court did not make any factual findings pertinent to this issue, we can not determine, as a matter of law, whether appellant's motions were timely. As alluded to earlier and as will become clearer later, this factual issue, relevant to the question of timeliness for purposes of intervention, is also relevant to the question of whether the motions to vacate should be granted. In the interest of judicial efficiency, the circuit court may decide to conduct one evidentiary

---

3. Appellee also asserts constructive notice by publication. However, constructive notice would be present only if appellee's failure to name appellant as a defendant, which permitted service by publication rather than personal service, was either proper or improper but not subject to attack. The question of impropriety in the context of the motions to vacate is discussed below.

proceeding in order to decide all factual issues relevant to all motions. In addition, based on overlapping factual and legal issues, the court may also wish to consider whether proceedings to resolve the motions in these actions should be consolidated with proceedings in appellant's action to quiet title. Nevertheless, after determining the facts, the court must resolve the question of timeliness, and thus intervention, as an independent, threshold issue.

### Motions to Vacate

In the event that the court determines that appellant's motion to intervene was timely, we shall comment on appellant's Rule 2–535 motions, and specifically, whether appellant's allegations, if proved, support a finding of extrinsic fraud.

Rule 2–535(b) provides that, after thirty days, a judgment may be revised only upon a showing, by clear and convincing evidence, of fraud, mistake, or irregularity. *See Tandra S. v. Tyrone W.*, 336 Md. 303, 313–14, 648 A.2d 439 (1994). The rationale underlying the rule's strict application is that, given the highly litigious nature of today's society, there must be a point in time when a judgment becomes final. *Id.* at 314, 648 A.2d 439. In addition, the court may only set aside a judgment when the moving party has acted with ordinary diligence and in good faith, and has a meritorious defense or cause of action. *Id.*

Appellant claims that appellee had constructive knowledge, based on land and court records, of appellant's claimed ownership interest because appellant had a recorded deed in the line of title for the railway right of way and because the property described in appellee's complaints was not the property conveyed by the October 1903 deed. Once legally charged with this knowledge, according to appellant, appellee's representations to the court that no parties had an interest in the case, other than the named defendants, were fraudulent.

The circuit court made no express findings of fact. One of the questions that will have to be resolved on remand, if material, is whether land and court records disclose that the

property described in appellee's complaints was conveyed by the October 1903 deed or whether it was retained by the grantor and ultimately conveyed to appellant. The dispute of fact is material unless, even if resolved in appellant's favor, the facts do not constitute fraud, as a matter of law, within the meaning of Rule 2–535(b). As explained below, we conclude that the facts, if proved, do constitute extrinsic fraud, and thus, the dispute is material.

We pause to note that, on remand, there could be evidence showing or tending to show appellee's actual knowledge of relevant facts, but there is none in the record before us. Similarly, there could be evidence, in addition to what is presently in the record, relating to the extent of appellant's actual knowledge. The discussion below relating to constructive fraud assumes a factual finding that appellee did not have actual knowledge of the facts and assumes that appellant's version of the facts are proved to be accurate. Such knowledge could constitute actual fraud as distinguished from constructive fraud. Our discussion also assumes a factual finding that appellant did not have actual knowledge that would be sufficient to negate any reliance by appellant on appellee's constructive fraud, if found to exist. In other words, our analysis of whether appellant may be entitled to relief under Rule 2–535(b) is based on the present record and assumes appellant's version of the facts to be correct.

### Extrinsic Fraud

In order to prevail on a motion to vacate under Rule 2–535(b), appellant must show fraud. Many cases have defined the terms "fraud, mistake, or irregularity," making it clear that the terms are to be narrowly defined and strictly applied. *See Tandra S.*, 336 Md. at 315, 648 A.2d 439. These cases have clearly established that "[t]he type of fraud necessary to vacate an enrolled judgment is extrinsic fraud, not fraud which is intrinsic to the trial of the case itself." *Id.* (citing *Hamilos v. Hamilos*, 297 Md. 99, 105, 465 A.2d 445 (1983)). In an attempt to distinguish between extrinsic and intrinsic fraud, we provided the following definitions:

Intrinsic fraud is defined as 'that which pertains to issues involved in the original action or where acts constituting fraud were, or could have been, litigated therein.' Extrinsic fraud, on the other hand, is 'fraud which is collateral to the issues tried in the case where the judgment is rendered.'

Fraud is extrinsic when it actually prevents an adversarial trial. In determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all.

*Hresko v. Hresko,* 83 Md.App. 228, 232, 574 A.2d 24 (1990).

In addition to providing a definition, this Court and the Court of Appeals have provided examples of each to assist in applying the rule. In *Schwartz v. Merchants Mortgage Co.,* 272 Md. 305, 322 A.2d 544 (1974), the Court of Appeals explained that "an enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are 'intrinsic' to the trial of the case itself." *Id.* at 308, 322 A.2d 544. In addition, the Court adopted a list of examples of extrinsic fraud set forth by the Supreme Court in *United States v. Throckmorton,* 98 U.S. 61, 65, 25 L.Ed. 93 (1900):

Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set

aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*Schwartz,* 272 Md. at 309, 322 A.2d 544.

Applying the definition and list of examples, the *Schwartz* Court affirmed the trial court's denial of appellant's motion to set aside a judgment for fraud, explaining that a conspiracy to commit perjury which comes to fruition during the trial of the case, even when it was entered into prior to the hearing, goes to the merits of the case and is considered intrinsic fraud. *Id.* at 310, 322 A.2d 544. Similarly, the Court, in *Tandra S. v. Tyrone W.,* 336 Md. 303, 648 A.2d 439 (1994), held that a paternity judgment may not be set aside on the basis of fraud, despite the fact that the mother included false statements in the original paternity complaint. *Id.* at 319, 648 A.2d 439. The Court reasoned that her statement in the original complaint that Tyrone W. was the father was intrinsic to the proceeding and did not prevent him from having a full adversarial proceeding. *Id.* at 319–20, 648 A.2d 439. On the other hand, in *Fleisher v. Fleisher,* 60 Md.App. 565, 483 A.2d 1312 (1984), we upheld the trial court's grant of appellee's motion to vacate based on a finding of extrinsic fraud, reasoning that appellant's self-serving and devious actions served to prevent appellees from challenging the transactions before they were entered as confessed judgments. *Id.* at 571–72, 483 A.2d 1312.

In the case before us, if fraud exists, it is extrinsic because it satisfies the definition of extrinsic fraud set forth above. If appellant's allegations are true, it should have been made a party to appellee's quiet title actions. The fact that appellee alleged that the last interest of record showed legal title in Beall and Rogers and that there were "no [other] persons claiming to have a hostile, outstanding right to said parcel of land" permitted service of process by publication as compared to naming appellant as a defendant and serving it with process. This is the type of fraud that the rule contemplates because it "actually prevent[ed] an adversarial trial." *Hresko,* 83 Md.App. at 232, 574 A.2d 24.

## Constructive Fraud

■ We also hold that appellant's allegations, if proved, constitute constructive fraud and that constructive fraud satisfies the fraud requirement in Rule 2–535(b). Constructive fraud is based on constructive knowledge that, in the case before us, is based on the contents of land and court records. Essentially, appellant claims that the deed relied on by appellee as the basis for naming the defendants in his quiet title actions described one property, not lying within the railway right of way, while the property described in his complaints to quiet title was another completely separate property, lying within the right of way. Appellant asserts that appellee's quiet title actions suggested that the properties were one and the same, resulting in appellee obtaining ownership rights in property that was not described in the deed used as the basis for naming the defendants.

Ultimately, if appellant can demonstrate, from land and court records, that the land described in its quit claim deed is the same land that appellant obtained through his quiet title actions, and that the October 1903 deed used as the basis for the adverse possession claim described different property, constructive fraud will have been shown sufficient to satisfy Rule 2–535(b). Constructive fraud under these circumstances does not require a finding of actual knowledge by appellee. A contrary holding would permit an individual to obtain ownership of property by reliance on an improper search of the chain of title to one parcel while seeking to quiet title to another, representing to the court that the title search revealed no parties claiming an interest and permitting process to be served by publication.

Appellee argues that recordation only provides constructive notice to subsequent purchasers or creditors. While the cases relied on by appellee involved situations in which a subsequent purchaser was charged with constructive knowledge based on a recorded deed, they did not expressly limit their application to those circumstances. In *McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 197 A. 580 (1938), the Court of

Appeals stated that "recordation of a deed subjecting land to restrictions afforded constructive notice thereof to all persons dealing with the property." *Id.* at 126, 197 A. 580 (citing *Lowes v. Carter,* 124 Md. 678, 93 A. 216 (1915)). This statement is also applicable to public court records. Accordingly, appellee is charged with constructive notice of the contents of public court and land records.

Although primarily arising in the context of setting aside a deed or a tax sale decree, pursuant to specific statutory provisions, constructive fraud has been recognized in various types of equity actions. *See, e.g., Alleco Inc. v. The Harry & Jeanette Weinberg Foundation,* 340 Md. 176, 199 n. 6, 665 A.2d 1038 (1995) (explaining that, in equity, fraud includes acts of constructive fraud). In *Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979), we defined constructive fraud as "a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others...." *Id.* at 406, 408 A.2d 1071 (quoting 37 C.J.S. Fraud § 2c at 211–12). We also noted that it need not be vicious and deliberate, but rests more upon a presumption and less upon furtive intent. *Id.* at 405, 408 A.2d 1071. As a primary example, we recognized that most cases involving constructive fraud "have involved the failure to give proper and legally required notice of the proceedings, or of some critical stage of the proceedings, to the former owner." *Id.* In *Scheve,* we ultimately held that the lower court erred in finding constructive fraud because there was no charge that the buyer failed to carry out any legal duty in connection with a foreclosure proceeding. *Id.* at 408, 408 A.2d 1071.

On the other hand, in *Arnold v. Carafides,* 282 Md. 375, 384 A.2d 729 (1978), and *Brooks v. McMillan,* 42 Md.App. 270, 400 A.2d 436 (1979), the Court of Appeals and this Court found constructive fraud justified the trial court's vacating of a tax sale decree. First, in *Arnold,* the Court of Appeals concluded that appellee obtained in rem jurisdiction and, therefore, the foreclosure decree, by constructive fraud because appellee knew or should have known appellant's address, but allowed

process to be served by publication. *Arnold,* 282 Md. at 383–84, 384 A.2d 729. Similarly, in *Brooks,* we held that appellee's lack of compliance with notice requirements effected a constructive fraud against appellant resulting in the loss of her property. *Brooks,* 42 Md.App. at 275, 400 A.2d 436. Our finding of constructive fraud was supported by the fact that appellee was personally aware of appellant's correct address, but did nothing to ensure that the petition was served on appellant at her known address. *Id.* at 273, 400 A.2d 436. Our application of constructive fraud in this manner is also consistent with the principle espoused in *Tyler v. Secretary of State,* 229 Md. 397, 184 A.2d 101 (1962), where the Court of Appeals stated that a case for fraud can be made where "a statement of fact, actually untrue, is made by a person who honestly believes it to be true, but under such circumstances that the *duty* of knowing the truth rests upon him, which, if fulfilled, would have prevented him from making the statement...." *Id.* at 405, 184 A.2d 101.

While we recognize that the concept of constructive fraud has not been directly applied in cases involving motions to vacate pursuant to Rule 2–535(b), we see no reason why it should not apply in that instance. The distinction between law and equity has been abolished, but to the extent that the historical distinction remains viable, we note that appellee's actions to quiet title are equitable in nature. *See* Md.Code, Real Prop. § 14–108 (1996 Repl.Vol. & 2002 Supp.) (explaining that a person seeking to quiet title may maintain a suit in equity). As a result, the equitable doctrine of constructive fraud should apply when considering a motion to vacate judgment in a quiet title action.

In the present case, appellant's allegations suggest that appellee's actions, whether deliberate or not, led the court to allow service by publication, despite the fact that service by process would have been required if an accurate title search would have revealed that appellant should have been named as a defendant. If the court finds that appellant's version of the facts is correct, appellee is charged with constructive knowl-

edge of appellant's possible interest, which would constitute extrinsic constructive fraud.

*Ordinary diligence, good faith, and meritorious defense*

In *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), the Court of Appeals explained that "[a] court [ ] will only exercise its revisory powers if, in addition to a finding of fraud, mistake, or irregularity, the party moving to set aside the enrolled judgment has acted with ordinary diligence, in good faith, and has a meritorious defense or cause of action." *Id.* at 314, 648 A.2d 439. In *Fleisher v. Fleisher*, 60 Md.App. 565, 483 A.2d 1312 (1984), we provided further guidance as to what is meant by those additional requirements. *Id.* at 572–73, 483 A.2d 1312. First, we concluded that appellees acted with ordinary diligence in moving to vacate the judgments as soon as they learned of their existence and had investigated the facts. *Id.* at 573, 483 A.2d 1312. Second, we rejected appellant's attempt to demonstrate that appellees acted in bad faith because appellee's acts could be explained by various reasons consistent with acting in good faith. *Id.* Finally, we recognized that appellees had at least two possible defenses to the judgments, satisfying the final prong of the Rule 2–535 requirements. *Id.*

In the case before us, the factual question with respect to the nature and extent of appellant's actual knowledge is relevant to the issue of whether appellant acted with ordinary diligence in pursuing its motions to vacate. As previously indicated, this question is also relevant to the motions to intervene, and the question will have to be resolved on remand. Next, appellee has made no claim that appellant's pursuit of its motions to vacate was not in good faith. Finally, appellant may have a defense to appellee's quiet title actions if it proves its version of the facts, based on the contents of land and court records and on an argument that the doctrine of adverse possession does not apply to a political subdivision. Although we can not determine whether appellant's arguments will prevail, we are satisfied that the last requirement is met.

For the reasons set forth above, we vacate the opinion and order dated December 13, 2001, and remand for further proceedings.

**OPINION AND ORDER DATED DECEMBER 13, 2001 VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**