840 A.2d 139

Alvin F. JENKINS

v.

**CITY OF COLLEGE PARK.**

**No. 37, Sept. Term, 2003.**

Court of Appeals of Maryland.

Dec. 19, 2003.

Reconsideration Denied Feb. 9, 2004.

___

acts or failure to act cannot destroy, frustrate, or impede that constitutional authority."

Richard C. Daniels (Daniels & Daniels; Walter W. Green of Law Offices of Walter W. Green, on brief), College Park, for Petitioner.

Suellen M. Ferguson (Levan, Colaresi, Ferguson & Levan, P.A., on brief), Columbia, for Respondent.

Argued before BELL, C.J., and ELDRIDGE,* RAKER, WILNER, CATHELL, BATTAGLIA, and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

CATHELL, Judge.

This case concerns a parcel of property located within the city of College Park, in which both the City of College Park, respondent, and Alvin F. Jenkins, petitioner, claim to own an interest. Petitioner claimed a right to the property in question by adverse possession in two separate actions to quiet title in the Circuit Court for Prince George's County. Petitioner served process by publication pursuant to Md. Rule 2–122[1] after filing affidavits asserting that no other persons

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Md. Rule 2–122 states:

"**Rule 2–122. Process–Service–In rem or quasi in rem.**

claimed a right to the property in question and that all persons appearing to have an interest in the property were named defendants whose whereabouts were unknown. In neither case did petitioner identify respondent as a party or as a defendant, or serve respondent with notice, even though, prior to the filing of petitioner's cases, the City of College Park purportedly had been deeded rights in the property at issue. Following the expiration of the response time to the pleadings, the Circuit Court entered default judgments in favor of petitioner for both actions.

On June 15, 2001, more than thirty days after each judgment had been entered, respondent filed motions to intervene, pursuant to Md. Rule 2–214,[2] and motions to vacate the default

---

(a) **Service by posting or publication.** In an in rem or quasi in rem action when the plaintiff has shown by affidavit that the whereabouts of the defendant are unknown and that reasonable efforts have been made in good faith to locate the defendant, the court may order service by the mailing of a notice to the defendant's last known address and:

 (1) by the posting of the notice by the sheriff at the courthouse door or on a bulletin board within its immediate vicinity, or

 (2) by publishing the notice at least once a week in each of three successive weeks in one or more newspapers of general circulation published in the county in which the action is pending, or

 (3) in an action in which the rights relating to land including leasehold interests are involved, by the posting of the notice by the sheriff in a conspicuous place on the land.

 Additionally, the court may order any other means of notice that it deems appropriate in the circumstances.

 (b) **Time.** The mailing and the posting or publication shall be accomplished at least 30 days before the date by which a response to the complaint is to be filed.

 (c) **Content of notice.** The notice shall be signed by the clerk and shall include the caption of the case; describe the substance of the complaint and the relief sought; inform the defendant of the latest date by which the response is to be filed; warn the defendant that failure to file the response within the time allowed may result in a judgment by default or the granting of the relief sought; and contain any other information required by the court."

2. Maryland Rule 2–214, in relevant part, states:

 "**Rule 2–214. Intervention.**

 (a) **Of right.** Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of

judgments in favor of petitioner, pursuant to Md. Rule 2–535(b).[3] At that time, respondent additionally filed its own Complaint to Quiet Title against petitioner regarding the same property in this case and a motion to consolidate the three matters in the three cases. While the two actions originally filed by petitioner were consolidated by order of the Circuit Court, the Circuit Court denied the consolidation motion in respect to respondent's complaint. On December 13, 2001, the Circuit Court for Prince George's County, in a formal written opinion and order, denied respondent's Motions to Intervene and to Amend Judgment.

Respondent appealed the Circuit Court's denial of the motions to the Court of Special Appeals. The Court of Special Appeals issued an opinion on March 27, 2003, vacating the decision of the Circuit Court. *City of College Park v. Jenkins,* 150 Md.App. 254, 819 A.2d 1129 (2003). The intermediate appellate court held that it could not resolve the factual questions presented and remanded the case to the Circuit Court.

Petitioner then filed a Petition for Writ of Certiorari with this Court, and, on June 19, 2003, we granted the petition.

---

the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.

. . .

(c) **Procedure.** A person desiring to intervene shall file and serve a motion to intervene. The motion shall state the grounds therefor and shall be accompanied by a copy of the proposed pleading setting forth the claim or defense for which intervention is sought. An order granting intervention shall designate the intervenor as a plaintiff or a defendant. Thereupon, the intervenor shall promptly file the pleading and serve it upon all parties."

**3.** Maryland Rule 2–535(b) states:
"**Rule 2–535. Revisory power.**

. . .

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

*Jenkins v. College Park,* 376 Md. 49, 827 A.2d 112 (2003). Petitioner presents five questions for our review:

"I. Did the Court of Special Appeals err in holding that the lower court was incorrect in its ruling that College Park's motion to intervene was not timely where the motion to intervene was filed more than two (2) years after the judgment had become final and the time for appeal had expired?

II. Where the lower court ruled that the motion to intervene was not timely, did the Court of Special Appeals err in holding that the Circuit Court failed to decide the merits of the motion to intervene?

III. Where the lower court expressly held that College Park's motion to intervene was not timely, did the Court of Special Appeals err in holding that the lower court must explicitly make findings of fact as to each of the remaining three individual factors relevant to a motion to intervene enunciated in *Chapman v. Kamara,* 118 Md.App. 418, 702 A.2d 977 (1997)?

IV. Did the Court of Special Appeals err in holding that the lower court erred in requiring that College Park satisfy the requirements of Maryland Rule 2–535 as part of the trial court's consideration of College Park's motion to intervene and amend judgment?

V. Did the Court of Special Appeals misstate Maryland law as it applies to constructive notice of the contents of public court and land records?"

Petitioner's questions essentially involve whether respondent's motions to intervene were timely and whether petitioner's notice by publication in light of respondent's alleged interest in the properties evidenced by a recorded deed constituted fraud allowing amendment of the Circuit Court's default judgments.

We hold that under the specific facts in the case *sub judice,* before the timeliness of respondent's motion to intervene in petitioner's quiet title cases involving petitioner's adverse possession can properly be assessed, it is first necessary to

resolve all factual questions regarding the alleged chains of title and boundary/surveying issues for the property in this case. Because the trial court denied respondent's motion to consolidate respondent's case with those of petitioner, it is impossible for this Court to now resolve the matters of title which must be resolved in order to determine whether the motion to intervene was timely. If the City of College Park should have been named as a specific party pursuant to § 14–108 of the Real Property Article, then the order of publication and the supporting affidavits might not have been sufficient to afford notice to it.

Once the title to the property is resolved on remand, then the trial court will be able to properly assess whether respondent should have been a named party to these cases pursuant to § 14–108 of the Real Property Article and whether respondent's motion to intervene was untimely. Accordingly, we affirm the Court of Special Appeals' vacating the trial court's order denying the motion to intervene and we remand this case to the Circuit Court with directions to consolidate the cases and resolve the title issues before ruling on respondent's Motion to Intervene and Amend Judgment.

## I. Facts[4]

On July 3, 1997, petitioner filed a complaint to quiet title, case number CAE97–13340, in the Circuit Court for Prince George's County for a property he claimed to own by adverse possession. Petitioner named the following as defendants in that complaint: the successors and assigns of Fillmore Beall and James C. Rogers, trustees; the heirs, successors, personal representatives, devisees and assigns of Francis Shanabrook; and any and all persons claiming an interest in the specified property. Petitioner did not name respondent as a party. The 0.1145–acre property was described by metes and bounds in an exhibit, a plat prepared by registered land surveyor William Machen. Petitioner alleged that the Prince George's

---

**4.** A more detailed description of the alleged chains of title is given within the "Discussion" section, *infra.*

County Land Records showed that legal title to the property was conveyed from City and Suburban Railway, owner, and Alan L. McDermott, receiver, to Fillmore Beall and James C. Rogers, appointed trustees of the estate of Francis Shanabrook,[5] by a deed dated October 22, 1903. The deed was recorded in Liber 17 folio 44. Petitioner also asserted, via affidavit, that after conducting a title search, the whereabouts of the defendants named in the suit were unknown[6] and that ho other persons claimed a right to the property. Petitioner, pursuant to court order, then served process by publication and no response was filed. Petitioner thus obtained an order of default on November 1, 1997 and a default judgment was entered on December 10, 1997.

Petitioner filed a second complaint to quiet title, case number CAE98–07817, in the Circuit Court for Prince George's County on April 17, 1998 concerning a parcel of property contiguous to the parcel subject to the 1997 action. The City of College Park was not named as a defendant. Petitioner described this 0.0455–acre parcel by metes and bounds and again claimed title through adverse possession, naming the same defendants as in his 1997 action. After receiving no response to petitioner's service by publication within the appropriate time period, the Circuit Court for Prince George's County entered an order of default on March 3, 1998 and a default judgment on May 13, 1998.

The two parcels that were the subjects of the two complaints by petitioner are located adjacent to property that petitioner had previously acquired by deed. In both actions, petitioner asserted that the defendants named therein were

---

**5.** The record in this case indicates that Mr. Shanabrook's name was spelled in at least three different ways. The "Shanabrook" spelling was used in several of the deeds, including the deed filed at J.W.B. 34 folio 421, which Mr. Shanabrook himself signed and is thus, presumably, the correct spelling of the name. The incorrect "Shannabrooke" spelling was used in the October 22, 1903 deed filed at Liber 17 folio 44. Litigation regarding Mr. Shanabrook's estate spelled his name "Shanabrooke."

**6.** The City of College Park was not named as a defendant.

the last owners of record pertaining to the property. As we have stated, respondent was not named as a defendant in either case. Petitioner alleged that, by virtue of the October 22, 1903 deed, title of the property was in the trustees of the estate of Francis Shanabrook.

Respondent disputes petitioner's assertions regarding title in the property. Respondent alleges that the parcels involved in this case, as described in petitioner's two complaints, lie within, *i.e.*, overlap, the railway right of way owned by respondent while the property actually described in the October 22, 1903 deed, aforesaid, does not lie within that right of way. Respondent therefore alleges that petitioner's complaints describe parcels of land that are not included in the 1903 deed.

Respondent allegedly acquired the railway right of way by quitclaim deed from The Bank of New York as the successor trustee of the Riders' Fund Trust on April 8, 1997, almost three months prior to petitioner filing the first case. Respondent recorded the deed on April 21, 1997, prior to petitioner filing any complaint to quiet title in the Circuit Court for Prince George's County. According to respondent, although some of the conveying instruments are absent from the record in this case, the interest in the railway right of way was conveyed to the trustee by a successor in interest to Columbia and Maryland Railway. Respondent asserts that the property in question in this case, the railway right of way, was retained by Columbia and Maryland Railway (and/or the trustees of the City and Suburban Railway) [7] and its successors and not included as a part of the conveyance in the October 22, 1903 deed.

Respondent alleges that several factors support that the railway right of way was not a part of the 1903 deed that is in the "Miller" chain of title.[8] First, respondent argues that the

---

7. The record before us is unclear as to whether "City and Suburban Railway" is also in the Railway chain of title.

8. The chain of title under which petitioner claims its adverse possession results is referred to herein as the "Miller" chain because the first deed

title lines of the property within petitioner's complaints and the railway right of way merged prior to the October 1903 deed. The allegations include that Francis Shanabrook conveyed a parcel of property to both Horace Miller, by deed in 1890, and the Columbia and Maryland Railway, by deed in 1895. After an alleged successor to Miller, City and Suburban Railway, had purchased part of the property, it discovered a discrepancy. It then purchased the remaining part of that property from Mr. Miller by deed in 1901 and sued Mr. Shanabrook's estate. A lawsuit to require the estate to repurchase the area of the parcel that the City and Suburban Railway did not plan to use (the section of the parcel the City and Suburban Railway purchased from Mr. Miller) soon followed. That section of the parcel was sold back to the Shanabrook Estate after the suit via the October 22, 1903 deed between the City and Suburban Railway and the Trustees of the Shanabrook Estate. Because the estate bought back only the property City and Suburban Railway did not need, City and Suburban Railway retained ownership of whatever property, if any, that was within the right of way that it had originally been conveyed. Respondent alleges that the October 22, 1903 deed left the Shanabrook Estate with title to nothing more than this remaining property and not title to the land within the right of way.

On June 15, 2001, respondent filed a Motion to Intervene and to Amend Judgment in both of petitioner's quiet title actions. As previously mentioned, the motion to intervene was filed pursuant to Md. Rule 2–214 and the motion to amend the judgment was filed pursuant to Md. Rule 2–535(b). Respondent additionally filed a complaint, naming petitioner as a defendant, to quiet title in the property at issue in this case.

Along with its intervention request, respondent argued that all three actions be consolidated. The Circuit Court for

---

from the common grantor in that chain was to a Miller. The chain of title under which respondent claims title shall be herein referred to as the "Railway" chain because the first deed from the common grantor was to the "Columbia and Maryland Railway." *See* the chains *infra.*

Prince George's County granted respondent's motion to consolidate with respect to the two actions initiated by petitioner but denied the motion to consolidate petitioner's actions with the one initiated by respondent. The Circuit Court then conducted an evidentiary hearing regarding respondent's motions to intervene and filed a written opinion on December 13, 2001. The trial court denied respondent's motions. In so doing, the trial court noted "its position that the City could not intervene in the Jenkins' case without satisfying the requirements of Maryland Rule 2–535." In denying respondent's motion pursuant to Md. Rule 2–535, the trial court found "nothing in the evidence that constitutes clear and convincing evidence of fraud."

## II. Discussion

While the questions presented to the Court in this case involve respondent's Motion to Intervene and to Amend Judgment, the determinative issues in this dispute are what, if any, interest does respondent still have in the property in question and, if so, whether respondent should have been a named defendant in petitioner's actions to quiet title in the property in question.[9] We hold that a determination of whether respondent should have been a named defendant in petitioner's two complaints, i.e., whether petitioner's notice by publication was sufficient notice as to respondent, first requires a resolution of the conflict regarding the title of the property. The state of the record before this Court, however, is insufficient to resolve the conflict between the two alleged titles. Because another quiet title action regarding this property, initiated by respondent, is not before this Court, the record in this case regarding both alleged chains of title is incomplete.

---

9. Respondent's separate action to quiet title is apparently still pending. Because it is a governmental entity against which adverse possession normally does not lie and its deed was recorded prior to the initiation of petitioner's cases, respondent's case and deed might continue to constitute clouds on the title held by petitioner in that the City of College Park was not named as a party in petitioner's suits.

It is impossible to remove the clouds on the title to this parcel of property, and to know whether respondent should have been named as a defendant in the case at bar, while the cases remain separate. An appropriate way to eliminate this cloud on the title would have been to consolidate the three lawsuits, a course of action rejected by the Circuit Court in the case *sub judice*. Although it was not presented as a specific issue to this Court, it is inextricably intertwined with the issues presented to this Court, *see Eid v. Duke*, 373 Md. 2, 816 A.2d 844 (2003). We hold that the Circuit Court abused its discretion by denying respondent's motion to consolidate respondent's case with the two cases initiated by petitioner, *i.e.*, the two actions that embody the present case.

## A. Timeliness

Motions to Intervene are governed by Maryland Rule 2–214, "Intervention." In the case of intervention as a matter of right, Rule 2–214(a) states:

"(a) **Of right.** Upon timely motion, a person shall be permitted to intervene in an action: (1) when the person has an unconditional right to intervene as a matter of law; or (2) when the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties."

In the case *sub judice*, petitioner's main contention is that respondent's motion to intervene was untimely. Petitioner argues that "there exists a presupposition that the action sought to be intervened in is currently pending when the motion to intervene is filed" and that, ultimately, once "a final judgment has been entered and enrolled, a motion to intervene is not timely as a matter of law because there is no longer a pending action." Respondent argues that a "motion to intervene must be granted when the party has an unconditional right to intervene as a matter of law, or when the party's interest is such that it will not be adequately repre-

sented" and that a "requirement that a motion be timely in the circumstances is meant to protect the rights of the parties, not to punish a litigant for tardiness."

We set out the standard for assessing the timeliness of a motion to intervene in the case of *Maryland Radiological Society, Incorporated v. Health Services Cost Review Commission*, 285 Md. 383, 388–89, 402 A.2d 907, 910–11 (1979), when we stated:

"Whether intervention be asked as of right or permissively, it is manifest ... that timely application is a prerequisite to such a request being granted. Thus, before proceeding to consider the substantive merits of an intervention motion, a trial court should require that the applicant demonstrate the promptness of his request. Whether it is so shown is dependent upon the individual circumstances of each case and rests in the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973). In considering the promptness factors contained in Federal Rule of Civil Procedure 24, which is almost identical to our Rule 208, the United States Supreme Court stated in *NAACP* that '[a]lthough the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances.' *Id.* at 365–66, 93 S.Ct. 2591 (footnote omitted). Even though all relevant circumstances should be taken into account in assessing the timeliness of an intervention motion, as a general guide for the trial courts of this State in their consideration of the issue we now fashion from the federal authorities the following framework for inquiry: one, the purpose for which intervention is sought; two, the probability of prejudice to the parties already in the case; three, the extent to which the proceedings have progressed when the movant applies to intervene; and four, the reason or reasons for the delay in seeking intervention. *See Natural Resources Defense Council v. Costle*, 561 F.2d 904, 907 (D.C.Cir.1977); *Commonwealth of Pa. v. Rizzo*, 530 F.2d

501, 506 (3d Cir.), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976)." [Footnote omitted.]

In *Coalition for Open Doors v. Annapolis Lodge No. 622, Benevolent and Protective Order of Elks,* 333 Md. 359, 367–69, 635 A.2d 412, 416 (1994), we later stated that:

"As the language of Rule 2–214 requires, timely application is a prerequisite for intervention. *See Maryland Radiological Society v. Health Serv.,* 285 Md. 383, 388, 402 A.2d 907, 910 (1979). Timeliness depends upon the individual circumstances of each case, 'and rests in the sound discretion of the trial court, which, unless abused, will not be disturbed on appellate review.' *Maryland Radiological Society v. Health Serv., supra,* 285 Md. at 388, 402 A.2d at 910, citing *NAACP v. New York,* 413 U.S. 345, 365–366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 662–663 (1973).

"Neither the federal cases ... nor the decisions of this Court set forth any special standard or requirement ... for intervention after the trial court's decision. Rather, under circumstances like those in the present case, where the losing party declines to appeal, courts generally permit an applicant to intervene for the purpose of appeal where the applicant has standing and where the applicant acts promptly after the trial court's decision. *See, e.g., United Airlines, Inc. v. McDonald,* 432 U.S. 385, 395–396, 97 S.Ct. 2464, 2470–2471, 53 L.Ed.2d 423, 432–433 (1977) ('The critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment.... Here, the respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal'); *Yniguez v. State of Ariz.,* 939 F.2d 727, 731 (9th Cir.1991) (" 'post-judgment intervention for purposes of appeal may be appropriate if the intervenors ... meet traditional standing criteria,' " quoting *Legal Aid Soc'y of Alameda County v. Brennan,* 608 F.2d 1319, 1328 (9th Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980)); *F.W. Woolworth Co. v. Miscellaneous Warehousemen's,* 629 F.2d 1204, 1213 (7th Cir.1980), *cert. denied,* 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981)

('an application for intervention is timely if it is brought shortly after the [existing party representing similar interests] indicates that she will not appeal').

"If ... the cases dealing with post-judgment intervention are analyzed as requiring an 'exceptional circumstance' before such intervention is allowed, the requisite 'exceptional circumstance' would be the losing party's failure to appeal or the real possibility that the losing party will fail to pursue appellate remedies." [Footnote omitted.]

Just as a losing party's failure to prosecute an appeal is an "exceptional circumstance" allowing a motion to intervene filed after a trial court's judgment to be characterized as timely, a motion to intervene can be timely even after a judgment has been entered where a party holding a properly recorded title to a parcel of property, as alleged in this case, was not named as a defendant pursuant to Maryland law.

In Maryland, actions to quiet title are governed by Md. Code (1974, 2003 Repl. Vol.), § 14–108 of the Real Property Article. Section 14–108, in its entirety, states:

" § 14–108. Quieting title.

(a) *Conditions.*—Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

(b) *Proceeding.*—The proceeding shall be deemed in rem or quasi in rem so long as the only relief sought is a decree

that the plaintiff has absolute ownership and the right of disposition of the property, and an injunction against the assertion by the person named as the party defendant, of his claim by any action at law or otherwise. *Any person who appears of record, or claims to have a hostile outstanding right, shall be made a defendant in the proceedings.*" [Emphasis added.]

The statute clearly mandates that, in pursuing an *in rem* proceeding to quiet title, a plaintiff *shall* name *all* persons identified by the land records as having an interest in the property or otherwise claiming an interest in the property in question. The last phrase of § 14–108(b) specifically directs that, "[a]ny person who appears of record, or claims to have a hostile outstanding right, *shall* be made a defendant in the proceedings" (alteration added) (emphasis added). In the actions initiated by petitioner in the case *sub judice*, respondent was not named as a defendant although respondent claims that the prior recorded quitclaim deed to it identifies it as a title owner of record in respect to the property involved in petitioner's cases.

Petitioner argues that, pursuant to Maryland Rule 2–122, his service by publication provided sufficient notice as his title search did not reveal respondent as being in the chain of title to the properties.[10] Rule 2–122(a), the relevant portion of Md. Rule 2–122, states:

"(a) **Service by posting or publication.** In an in rem or quasi in rem action when the plaintiff has shown by affidavit that the whereabouts of the defendant are unknown and that reasonable efforts have been made in good faith to locate the defendant, the court may order service by the mailing of a notice to the defendant's last known address and:

(1) by the posting of the notice by the sheriff at the courthouse door or on a bulletin board within its immediate vicinity, or

---

**10.** As we shall indicate a properly conducted title search might have discovered the alleged interest of respondent.

(2) by publishing the notice at least once a week in each of three successive weeks in one or more newspapers of general circulation published in the county in which the action is pending, or

(3) in an action in which the rights relating to land including leasehold interests are involved, by the posting of the notice by the sheriff in a conspicuous place on the land.

Additionally, the court may order any other means of notice that it deems appropriate in the circumstances."

Petitioner's notice of publication for both cases did not specifically name respondent, but included the language, "and any and all persons or corporations having or claiming to have any interest in the property described. . . ." If respondent's interest does not fall within the purview of § 14–108 of the Real Property Article, then this notice would appear to have been valid notice to respondent. The determinative question, therefore, is whether the deed of conveyance to respondent was properly within the chain of title, so that respondent's alleged title in the property should have been discovered by petitioner's title search, thus requiring the specific naming of respondent as a defendant in petitioner's quiet title actions. If respondent should have been a named defendant in both cases, petitioner's affidavits certifying that he notified the proper defendants would have provided incorrect information and the resulting orders allowing notice by publication pursuant to Rule 2–122 would be invalid.[11] If the notice by publication was invalid, then respondent's motion to intervene may not have been untimely because respondent would not have received

---

11. These facts, if proven on remand, would be pertinent to respondent's motion to amend the default judgments. Respondent claims that petitioner's failure to name respondent as a party, where it had a recorded title in the property, constituted a fraud, mistake or irregularity sufficient for the trial court to invoke its revisory power, pursuant to Md. Rule 2–535(b), in order to vacate the default judgment. The Court of Special Appeals, in its opinion in this case,, thoroughly dealt with the question of fraud below. *City of College Park*, 150 Md.App. at 267–74, 819 A.2d at 1136–41. We do not reach the issue for the same reason we do not decide the issue of timeliness-the record is incomplete with respect to respondent's alleged chain of title in the property.

notice of the pending *quia timet* proceedings in violation of both § 14–108 and Rule 2–122.

The only way to determine whether respondent's interest in the property entitled respondent to be a named defendant pursuant to § 14–108 is to examine the chains of title, and by doing so, establish the exact nature of respondent's interest, if any, in the property. If respondent did indeed possess a valid interest in the title to the property in this case which was recorded prior to petitioner's complaints being filed with the Circuit Court, then petitioner's notice by publication was not valid to notify respondent of the quiet title actions. Under those circumstances a delay in the filing of respondent's motion to intervene might well have been justifiable.

### B. Alleged Chains of Title & Consolidation

#### 1. Alleged Chains of Title

As we have noted, however, the record in this case does not reflect the full and complete chains of alleged titles of both petitioner and respondent. We now include, as best we can given the state of the record, an overview description of the alleged chains contained in that record as follows. Both alleged chains of title date back to the August 1889 deed to Francis Shanabrook, filed at Liber J.W.B. 13 folio 467. The problem leading to the alleged split in the chain of title appears to have arisen from an apparent boundary overlap in two conveyances made by Mr. Shanabrook.[12] First, on March 21, 1890, Mr. Shanabrook conveyed a parcel, allegedly including the disputed property in the case *sub judice,* to one Horace W. Miller of Philadelphia. This deed was filed at Liber J.W.B. 14 folio 402 (the Miller chain of title). Later, on November 26, 1895, Mr. Shanabrook conveyed property,[13] *i.e.,*

---

12. Respondent alleges that Mr. Shanabrook re-subdivided his subdivision, giving different lot numbers to the same lots, which also played a role in the confusion regarding title to the property in question here.

13. One of the factual questions to be resolved on remand is a determination of the exact dimensions of the properties conveyed in the deeds,

a railroad right of way, to the Columbia and Maryland Railway, which apparently overlapped with the property conveyed to Mr. Miller in 1890. The deed was enrolled on December 4, 1895, and later filed at Liber J.W.B. 34 folio 421 (the Railway chain of title). The deed stated that if the railway mentioned in the deed was not "completed and in operation within eighteen months from the date hereof the property hereby granted shall revert to the Grantor," Mr. Shanabrook.

It is alleged that the owner of the property passing up the Miller chain of title,[14] City and Suburban Railway, discovered the boundary overlap between the right of way Columbia and Maryland Railway received in 1895 and the property granted by the 1890 deed to Mr. Miller, when Mr. Miller granted the property, including the overlapping portions of the parcel, to City and Suburban Railway by deed dated May 16, 1901. The deed was filed at Liber 3 at folio 413. Respondent alleges that City and Suburban Railway only wanted to keep title to its right of way and that it sought, via a lawsuit, to have the excess of the May 16, 1901 deed purchased by Mr. Shanabrook's estate. As a result of the lawsuit, *Long v. Long,* Equity Court Nos. 2793 and 2959 (consolidated cases) it appears that Mr. Shanabrook's estate was directed to reacquire the excess of the property City and Suburban Railway purchased from Mr. Miller. In fact, the trustees of the Shanabrook Estate submitted a report to the Equity Court including a hand-written amendment to the report describing two different lots stating that the estate owned "all of said two lots not occupied by Electric Railway" (alterations added). As

---

including the alleged overlap, throughout the entire chain of title for both alleged title chains of the property.

**14.** Discerning the exact chains of title for the Miller and the Railway chains of title, including all members of the chain, is another necessary factual question to be resolved on remand. Respondent asserts that City and Suburban Railway, D.C. Transit System and others are all in the Railway chain of title, but not all deeds are in the record for this case. For the purposes of this appeal and to avoid confusion, we will assume that respondent's assertion is correct, but this assumption is not meant to be determinative as to the trier of facts' resolution of the issue on remand.

a result of the litigation involving the Shanabrook Estate, City and Suburban Railway officially conveyed the excess of land it purchased from Mr. Miller to Mr. Fillmore Beall and Mr. James Rogers, through Mr. Allan McDermott, receiver, by deed dated October 22, 1903 and recorded at Liber 17 folio 44. This deed contains language conveying to the estate of Mr. Shanabrook all of the described parcel "except that portion thereof embraced within the limits of the description contained in the deed from Francis Shanabrooke [sic] to said City and Suburban Railway [15] dated December 4, 1895 recorded in Liber J.W.B. No. 34 folio 421 of said land records" (alteration added).

After obtaining the railway right of way by the deed recorded at Liber J.W.B. 34 folio 421, the Columbia and Maryland Railway allegedly failed to satisfy the deed's condition of completing and making operational its railway within eighteen months of the 1895 deed. If these facts are correct, the property would have then automatically reverted back to the grantor, Mr. Shanabrook. In a deed dated July 25, 1898 and recorded at Liber J.B. 4 folio 190, (almost five years before the granting and regranting of the Miller chain of title proper-

---

**15.** This deed contained language indicating that City and Suburban Railway succeeded to the title of the Columbia and Maryland Railway. However, we have been unable to find any evidence apparent from the record forwarded as to any evidence of such succession. Apparently, it is yet to be found, if extant, in the land or estate records of Prince George's County.

Additionally, the language of this deed to Mr. Beall and Mr. Rogers mistakenly described the deed recorded at Liber J.W.B. 34 folio 421 as conveying property to City and Suburban Railway where that deed actually conveyed property, subject to a reverter, to Columbia and Maryland Railway. It is alleged that City and Suburban Railway was a successor in interest to Columbia and Maryland Railway, but the exact chain of title is unclear from the record. As noted *infra*, the record in the case *sub judice* only notes that by 1903 the property in the "Railway" chain of title had already been re-conveyed (after a reversion) from Mr. Shanabrook to the Maryland Traction Company.

The confusion is further evident from the fact that respondent describes City and Suburban Railway as being in its chain of title, the "Railway" chain of title, even though we have been unable to identify any deed of conveyance in the record of this case confirming that position.

ty in October of 1903) Mr. Shanabrook reconveyed his title to the property he reacquired by the reversion created in the deed recorded at Liber J.W.B. 34 folio 421, to an alleged successor of Columbia and Maryland Railway, the Maryland Traction Company. At this point, the record is unclear as to one or more of the exact successors in the Railway chain of title. Respondent alleges that the successors to the railway right of way deed in the Railway chain of title include City and Suburban Railway, the D.C. Transit Company, Inc., Riders' Fund Trust and The Bank of New York, but it is not clear where they fall within that chain, or whether they are indeed within that chain at all. As mentioned previously, the deeds or other documents affecting title regarding these alleged successors are not contained within the record in this case. Presumably those records are a part of the case initiated by respondent as the burden in that case is on respondent to prove that it is in possession of a valid title, *see* § 14–108 of the Real Property Article; that case, however, was not consolidated by the trial court with the one at bar. The incompleteness of the record before this Court and the intermediate appellate court may be due, therefore, in part to the denial of respondent's motion to consolidate. Respondent asserts that, after these predecessors in interest, it acquired title to the property in question in this case by quitclaim deed from The Bank of New York on April 8, 1997. That quitclaim deed was recorded at Liber 11386 folio 160 on April 21, 1997 prior to the filing of petitioner's cases.

Petitioner asserts, however, that the October 22, 1903 deed recorded at Liber 17 folio 44 conveyed all of property in question in the case *sub judice* to the Shanabrook Estate, *i.e.*, Mr. Beall and Mr. Rogers, trustees. Petitioner filed affidavits asserting that no other persons claimed any right to the property and that the whereabouts of the "heirs, successors, personal representatives, devisees, and assigns of Francis Shanabrooke [sic] and all of their respective heirs, successors, personal representatives, devisees, and assigns" were unknown. Petitioner, claiming adverse possession of said property, filed two complaints to quiet title and obtained default

judgments on both parcels, which encompass the property involved in the case *sub judice.*

The following chart depicts our preceding written description of the respective alleged Miller and Railway chains of title in a more concise form.

MILLER CHAIN OF TITLE RAILWAY CHAIN OF TITLE

Shanabrook (from JWB 13/467; August 1889)

JWB 14/402
March 21, 1890

JWB 34/421; November 26, 1895; enrolled December 4, 1895 (Deed contains reverter if railroad not built within 18 months)

Miller Boundary Overlap

Columbia and MD Railway (Railway)

Liber 3/413
May 16, 1901

Railroad apparently not built – property allegedly reverts to Shanabrook

City & Suburban Railway

Equity Court Nos. 2793 & 2959 Circuit Court for Prince George's County, MD

JB 4/190
July 25, 1898

Maryland Fraction Company (alleged successor to the Railway)

Liber 17/44
October 22, 1903

recording data missing from record of this case – including the deeds or other documents effecting the conveying of the property to various owners, including the D.C. Transit Company, Inc. and Riders' Fund Trust (successors of the Railway)

Beall & Rogers (Trustees of Shanabrook)
*Except that property conveyed by deed recorded at JWB 34/421*

July 3, 1997 April 17, 1998

Bank of New York
Successor to Riders' Fund Trust

Jenkins' Adverse Possession Lawsuit #1 - CAE 97-13340

Jenkins' Adverse Possession Lawsuit #2 - CAE 98-07817

Quitclaim Deed
11386/160; April 21, 1997

City of College Park

The emphasized text above denotes the deed to Beall and Rogers, which mistakenly described the deed recorded at J.W.B. 34 folio 421 as conveying property to the City and Suburban Railway where that deed actually conveyed property to the Columbia and Maryland Railway. It appears that by

1903 this particular railroad property had already been re-conveyed by Shanabrook (after a reversion) to the Maryland Traction Company.

## 2. Consolidation

As the overview of the alleged chains of title to the property in question makes clear, several facts necessary to determine whether respondent had valid title in the property in question are absent from this record. In addition, respondent has a pending quiet title action involving this same property, which specifically involves a similar issue as petitioner's suits-the issue of title to the property in this case. Under circumstances where respondent's case remains separate from the ones at bar, it will be impossible to resolve fully the issues regarding the title to the property. Each of the cases may themselves constitute clouds on the title to the property described in the other cases. We therefore examine whether the trial court should have granted respondent's motion to consolidate its case with the actions at bar so that the record involving title of the property would be complete, thus allowing all questions involving title to the property in this case to be confronted contemporaneously by one trier of fact.

This Court has said that "[w]ith respect to procedural issues, a trial court's rulings are given great deference" and "[o]nly upon a clear abuse of discretion will a trial court's rulings in this arena be overturned." *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443–44, 795 A.2d 715, 720 (2002) (alterations added). A trial court's ruling on a motion for consolidation is a ruling in respect to a procedural issue. *See* Md. Rule 2–503 (the Maryland Rule of Civil Procedure regarding consolidation). In reviewing a decision subject to the abuse of discretion standard, we have said that:

> "This Court has defined judicial discretion as 'that power of decision exercised to the necessary end of awarding justice and based upon reason and law, but for which decision there is no special governing statute or rule.' Necessarily, when there is no hard and fast rule governing the situation, in arriving at a decision, the trial judge must

exercise his or her judicial discretion and the resulting decision is reviewed for the soundness and reasonableness with which the discretion was exercised. In making that evaluation, the reviewing court defers to the trial court. The necessity for doing so is inherent in the very nature of judicial discretion. *'Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'* In re Don Mc., 344 Md. [194,] 201, 686 A.2d [269,] 272 [1996] (*quoting State ex rel. Carroll v. Junker,* 79 Wash.2d 12, [26,] 482 P.2d 775, 784 (1971))."

*Goodman v. Commercial Credit Corp.,* 364 Md. 483, 491–92, 773 A.2d 526, 531–32 (2001) (some citations omitted) (some alterations added) (emphasis added).

We hold that, under the specific facts in this case, denying respondent's motion to consolidate its case with those of petitioner was an abuse of discretion because respondent's case was integral to the resolution to the issue of title of the property within petitioner's actions. First, respondent's quiet title action specifically alleges that it has valid title to the property in question. Under § 14–108 of the Real Property Article, respondent has the burden of proving title (and anyone challenging that title has the burden of proving superior title), thus the full chain of title should be produced in the record of that case. *See Porter v. Schaffer,* 126 Md.App. 237, 265, 728 A.2d 755, 769, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999). In addition, the very purpose of a *quia timet* action is to resolve clouds on title so to protect the owner of legal title to the property in question. *See Wathen v. Brown,* 48 Md.App. 655, 658, 429 A.2d 292, 294 (1981). Regardless of the outcome of a resolution of petitioner's cases to quiet title, if respondent's case is not consolidated with those cases, a cloud will remain on the title by virtue of respondent's pending quiet title case. The only way in which to resolve the factual issues and ultimate question of who owns legal title to the property is to have all three cases presented to the same trier

of fact within one case. The cases, therefore, should have been consolidated; to deny the motion to consolidate was an unreasonable and untenable decision. We therefore hold that the trial court abused its discretion in denying respondent's motion to consolidate.

## C. Adverse Possession Issues on Remand

 As we cannot resolve the factual disputes regarding the title questions of the properties involved in this case, our holding necessitates a full hearing on the matter below, including the specific facts regarding petitioner's alleged adverse possession of the property. This Court has said, "[t]o establish title by adverse possession, the claimant must show possession of the claimed property for the statutory period of 20 years. Such possession must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted" (alteration added) (footnote omitted). *Costello v. Staubitz,* 300 Md. 60, 67, 475 A.2d 1185, 1188 (1984). *See also East Washington Railway Co. v. Brooke,* 244 Md. 287, 294–95, 223 A.2d 599, 603–04 (1966); *Blickenstaff v. Bromley,* 243 Md. 164, 170, 220 A.2d 558, 561 (1966).

One of the central factual questions regarding petitioner's adverse possession on remand (presuming respondent is able to establish its alleged title interest) will be whether petitioner's adverse possession tolled before or after respondent recorded its quitclaim deed from The Bank of New York on April 21, 1997. If the 20 years had not tolled prior to the recording of the quitclaim deed, and respondent acquired title by reason of the quitclaim deed, petitioner could not be able to acquire title to the property by adverse possession because one cannot adversely possess the property of a municipality devoted for public use. *See Central Collection Unit v. Atlantic Container Line, Ltd.,* 277 Md. 626, 629, 356 A.2d 555, 557 (1976); *Siejack v. Mayor and City Council of Baltimore,* 270 Md. 640, 644, 313 A.2d 843, 846 (1974) (stating, "Quite likely nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse

possession. Less frequently encountered, however, although apparently as well established, is the notion that municipal property not devoted to a public use can be so acquired. Until now we seem not to have been required to consider whether it should be acknowledged to be the law of Maryland. We think it is and we so hold, but it must not be supposed that our holding goes any further than the case at bar or any other or future case having a similar factual background.") (citations omitted); *see also Desch v. Knox*, 253 Md. 307, 311–12, 252 A.2d 815, 818 (1969); *see also Bond v. Murray*, 118 Md. 445, 452–53, 84 A. 655, 658–59 (1912) (holding that property held by a company under a grant from the State cannot be obtained by adverse possession); *Hall v. Gittings*, 2 H. & J. 112, 114 (1807) (stating, "that there is no adversary possession on the part of the defendant which can defeat the right derived from the State").[16] In this case, respondent alleges that its use of the property in question as a community bike path, is a public use.

In the alternative, if petitioner had satisfied the requirements of adverse possession of the property before the quitclaim deed was conveyed and recorded by respondent, petitioner would have full title to the property regardless of respondent being a municipality. Once petitioner satisfied the requirements of adverse possession, the previous title owner in respondent's alleged chain of title, The Bank of New York, would have had no interest in the property. *See Erdman v.*

---

**16.** Another factor to consider is that, according to respondent's alleged chain of title, one of the successors in interest to the Columbia and Maryland Railway was the D.C. Transit System. If this, or any other, alleged successor in interest is classified as a public entity or was using the property for a public use, then, depending on when the governmental entity was in possession and when the property was utilized for a public use, petitioner's adverse possession may not have been tolling during the time period in question. Adverse possession cannot toll during any time that a municipality had title to and/or was utilizing the railway right of way for public use. *Siejack*, 270 Md. at 644, 313 A.2d at 846. Petitioner's adverse possession could not toll during any such public ownership, if the land was either owned by a public entity during petitioner's tolling period or if the tolling period had not reached 20 years by the time respondent obtained title.

*Corse,* 87 Md. 506, 510, 40 A. 107, 109 (1898) (holding that a title acquired by adverse possession "is good, even though there were serious defects in the paper title").

Since The Bank of New York allegedly conveyed the property to respondent via a quitclaim deed, respondent could only have obtained that to which the bank had title. Black's Law Dictionary defines a quitclaim deed as:

"A deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid. . . .

'A quitclaim deed purports to convey only the grantor's *present interest in the land,* if any, rather than the land itself. Since such a deed purports to convey whatever interest the grantor has at the time, its use excludes any implication that he has good title, or any title at all. Such a deed in no way obligates the grantor. If he has no interest, none will be conveyed. If he acquires an interest after executing the deed, he retains such interest. If, however, the grantor in such deed has complete ownership at the time of executing the deed, the deed is sufficient to pass such ownership. . . . A seller who knows that his title is bad or who does not know whether his title is good or bad usually uses a quitclaim deed in conveying.' Robert Kratovil, *Real Estate Law* 49 (6th ed. 1974)."

*Black's Law Dictionary* 424 (Bryan A. Garner ed., 7th ed., West 1999). Because of the nature of the quitclaim deed, respondent could only obtain the interest in the property which The Bank of New York had in its possession. In a factual scenario where petitioner has satisfied the requirements of adverse possession before respondent obtained the property, The Bank of New York may have had nothing to convey, therefore the quitclaim deed to respondent may have conveyed, under such circumstances, no interest in that land to respondent.

The very nature of these differing scenarios, and the drastically different results dependent on whether respondent had legal title via its alleged chain of title, illustrates the absolute

necessity for all of the facts regarding title to be presented in one case. The decision to keep the cases separate was untenable. By denying respondent's motion to consolidate, the trial court abused its discretion.

### III. Conclusion

In conclusion, we hold that the trial court abused its discretion in denying respondent's motion to consolidate its quiet title action with the two quiet title actions in respect to the same property now before this Court. We vacate the trial court's orders denying respondent's motion to consolidate and motion to intervene due to the record's silence as to pertinent facts necessary for the proper examination of those issues. We do not reach, however, the specific questions presented on appeal because the record is incomplete with respect to key factual issues of title to the property in question, facts that are determinative in respect to the issue of timeliness of respondent's motion to intervene and motion to vacate judgment. If respondent has valid title and was entitled, pursuant to § 14–108 of the Real Property Article, to be named a defendant to petitioner's quiet title actions, then petitioner's affidavits allowing the trial court to order notice by publication, and the subsequently obtained default judgments in petitioner's favor, may have been invalid. The trier of fact must resolve these and other issues involving the chains of title and adverse possession of the property on remand.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS VACATED AND THE CASE IS REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID 50% BY PETITIONER AND 50% BY RESPONDENT.**